**Roy F. WILSON, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. CIV–87–0620–PHX–WPC.**

United States District Court, D. Arizona.

April 29, 1988.

On Application For Attorney Fees Aug. 8, 1988.

Joel Friedman, Phoenix, Ariz., for plaintiff.

Asst. U.S. Atty. John Mayfield, Phoenix, Ariz., for defendant.

MEMORANDUM AND ORDER

COPPLE, District Judge.

Plaintiff brought this action under sections 205(g) and 1631(c)(3) of the Social

Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), to obtain judicial review of a final decision of the Secretary of Health and Human Services which denied his claim for a period of disability insurance benefits and supplemental security income.

## I. PROCEDURAL BACKGROUND

The plaintiff, Mr. Wilson, filed his applications for benefits on September 24, 1985 (Tr. 56–69). He alleged that he became unable to work on August 16, 1985 due a heart condition following a heart attack (Tr. 56, 61). The applications were denied initially (Tr. 70–1 & 75–82) and upon reconsideration (Tr. 83–6 & 90–2).

A hearing was held on August 20, 1986 before Administrative Law Judge (ALJ) Sol A. Wieselthier (Tr. 22–55). In his decision the ALJ found that Mr. Wilson had no nonexertional limitations, retained the residual functional capacity for a full range of light work, and was not under a disability as defined by the Act (Tr. 7–13). The ALJ made no express finding as to the credibility of plaintiff's testimony concerning subjective complaints of pain, symptoms or functional limitations. This action was filed after a request for review of the decision was summarily denied by the Appeals Council on March 24, 1987 (Tr. 3–4).

## II. MEDICAL BACKGROUND

Plaintiff was 44 years old at the time of his hearing. He completed ninth grade (Tr. 29) and obtained a GED (Tr. 29). He worked for approximately 25 years in the construction industry, operating heavy equipment for the last 15–20 years (Tr. 30, 99). He had an accidental below the knee amputation over twenty years ago and has a functioning prosthesis (Tr. 10). It is undisputed that Mr. Wilson cannot return to his former work (Tr. 10, 12, 72, 77, 79, 136, & 180).

Medical records show (Tr. 117–122) that plaintiff was admitted to the Mesa Lutheran Hospital emergency room on August 16, 1985, complaining of substernal chest pain radiating from the base of his neck to the left arm, associated with severe diaphoresis, a choking feeling, and shortness of breath. While there, he exhibited recurrent ventricular tachyarrhythmia and continued to experience pain despite the medication that was administered. An EKG showed injury to the anterolateral wall, so he was transferred to Desert Samaritaran Hospital for emergency coronary angiography and additional procedures.

After tests, Dr. Akhtar, a Board-certified internist specializing in treatment of cardiovascular disease (Tr. 134), administered supra-selective intra-left anterior descending coronary artery streptokinase infusion, with coronary balloon angioplasty of the left anterior descending artery. After dilatation, patency of the left anterior descending artery was observed, with no evidence of residual stynoses in the proximal segment. Diagnoses included left ventricular dysfunction by blood pressure readings, successful coronary balloon angioplasty of the left anterior descending artery to resolve total proximal occlusion, and moderate obstructive disease of the right coronary artery (Tr. 121–22).

Mr. Wilson remained in the hospital from August 17–27. Following the angiography, cardiac enzymes were significantly elevated, indicating myocardial infarction or possible washout with intra-coronary streptokinase and coronary balloon angioplasty. EKGs and an echocardiogram demonstrated several problems with Mr. Wilsons heart; upon discharge the diagnoses included acute myocardial infarction, angioplasty of the left anterior descending artery, and diabetes mellitus (Tr. 116).

Dr. Akhtar continued to see the plaintiff as an out-patient, and completed an "attending physician's statement" on September 12, 1985 and July 9, 1986 advising that plaintiff was unable to perform any work in his regular or alternative occupations due to myocardial infarction, status post angioplasty of the left anterior descending artery, diabetes mellitus, and hyperlipidemia (Tr. 136, 180). In addition, Dr. Akhtar noted that Mr. Wilson was unable to climb, and experienced total restriction of activities involving moving machinery, unprotected heights, exposure to marked

changes in temperature and humidity, and exposure to dust, fumes and gases.

Mr. Wilson was also treated at Pinal General Hospital by a Dr. Olivier in January 1986 (Tr. 160–173). Dr. Olivier reported that while Mr. Wilson initially felt better after the angioplasty, there was a recurrence of his angina. The pain was exacerbated by exertion and occurred at night and upon awakening, and shortness of breath occurred even at rest and when lying flat (Tr. 161). While Mr. Wilson was smoking at that time, he had reduced his consumption by roughly one third. An EKG demonstrated an old MI with incomplete bundle branch block, ST elevation in V 1 through 3 and a persistent lateral ischemic feature. On his next visit Dr. Olivier noted Mr. Wilson's angina, shortness of breath and increased tiredness. He recommended cardiac catheterization and a possible cardiovascular stress test in light of his additional symptoms and enzymes (Tr. 160).

A Residual Functional Capacity Assessment was completed by Dr. Soo Hoo, who specialized in family practice, in February, 1986. Dr. Soo Hoo agreed with Dr. Akhtar that Mr. Wilson should avoid fumes, dust, smoke, humidity and temperature extremes. He noted that Mr. Wilson could never climb, balance or use a left foot control, and must avoid sustained arm/leg activities (Tr. 87).

In spite of the repeated interruptions by the ALJ (See e.g. Tr. 38), Mr. Wilson's testimony (Tr. 24–55) indicated that he cannot kneel, climb steps, operate left pedals, stand for longer than 15–20 minutes without discomfort or sit longer than 3–4 hours without experiencing angina (Tr. 37–38). Humid weather makes it harder for him to breathe (Tr. 40–1). He never lifts or carries anything heavier than 5 pounds (Tr. 41). His activities around the house are limited to some dish washing, cooking dinner, dusting, vacuuming and occasionally watering the lawn (while sitting on the porch or leaning against a tree); he does no gardening (Tr. 45–50). His activity around the house is punctuated by breaks so that he may rest before continuing (Tr. 46).

He was told by Dr. Akhtar to walk a couple of times a day for exercise. On a good day, he can walk two blocks in approximately 10 minutes. On a bad day (especially if the humidity is high), he must sit down and rest after a half block and it can take up to 45 minutes to go the entire two blocks (Tr. 49).

Mr. Wilson began to attend a vocational school sometime in May 1986 four days a week because he believed that he had to attend (Tr. 41–2 & 53). He had to take a month off, however, because of medical problems aggravated by a "field trip" to Mount Lemmon (Tr. 42). He experiences more fatigue as a result of attending the classes (Tr. 52), and in addition to the hourly 10 minute breaks (Tr. 53) he has made arrangements with the department head that he can leave the classroom if he is not feeling well. In the first two months he had to do so on a couple of occasions (Tr. 54).

## III. ANALYSIS

Under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), a district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the case for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

The decision of the Administrative Law Judge can only be set aside if there is legal error or no substantial evidence on the whole to support the decision. *Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir.1985). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Taylor v. Heckler,* 765 F.2d at 875.

■ The Ninth Circuit requires the ALJ to rely on the treating doctor or set forth specific legitimate reasons for not doing so which are based on substantial evidence in the record. *Sprague v. Bowen,* 812 F.2d

1226 (9th Cir.1987); *Murray v. Heckler,* 722 F.2d 499 (9th Cir.1983).

Initially the burden is on the claimant to establish that he or she can no longer perform past relevant work. Once the claimant proves his inability to do so, the burden shifts to the Secretary to prove that the claimant can engage in other types of substantial gainful work which exists in the national economy. *Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275 (9th Cir.1987); *Yuckert v. Heckler,* 774 F.2d 1365 (9th Cir.1986); *Hall v. Secretary of Health, Education and Welfare,* 602 F.2d 1372 (9th Cir.1979).

The plaintiff has carried his burden of proving that he cannot return to his former work (Tr. 10, 12). A review of the entire record reveals that there is not substantial evidence to support the ALJ's contention that Mr. Wilson can perform light work, thus the Secretary failed to meet his burden. The treating physician has consistently indicated that Mr. Wilson cannot return to any type of work (Tr. 136 & 180). There are no medical opinions offered by any of the physicians who actually examined or treated the plaintiff which indicate that he could return to some form of work, thus his treating physician's opinion stands uncontroverted. The ALJ offered no substantial evidence to justify his rejection of Dr. Ahktar's opinion which, contrary to the ALJ's assertion, has remained consistent throughout (*cf.* Tr. 136 to Tr. 180).

The ALJ also found (Tr. 12) that Mr. Wilson had no nonexertional limitations. While Dr. Ben–Asher, who specialized in Nephrology and Internal Medicine, found no environmental restrictions in his Residual Functional Capacity Assessment (Tr. 72–73), he never examined Mr. Wilson and formed his opinion prior to the worsening of symptoms noted by Dr. Olivier in January. Both the primary treating physician (Tr. 181) and Dr. Soo Hoo's Residual Functional Capacity Assessment (Tr. 87–88) noted subsequently that Mr. Wilson must avoid fumes, dust, smoke, humidity and temperature extremes. Since the most recent medical opinion is the most probative (*Young v. Heckler,* 803 F.2d 963 (9th Cir.

1986)), the ALJ's finding that he does not suffer any nonexertional limitations (Tr. 12) is completely erroneous. As a result, the ALJ's application of the Appendix 2 Medical–Vocational Guidelines ("grids") to deny Mr. Wilson's claim was impermissible. *Allen v. Secretary of Health and Human Services,* 726 F.2d 1470, 1472 (9th Cir.1984), citing, *inter alia, Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984).

The ALJ's decision is replete with mischaracterizations of the medical evidence and contains legal error. Therefore,

IT IS ORDERED:

1. Plaintiff's Motion for Summary Judgment is granted.
2. Defendant's Cross–Motion for Summary Judgment is denied.
3. The Secretary of Health and Human Services shall pay plaintiff the disability benefits to which he is entitled.
4. The Clerk shall enter Judgment accordingly.

### On Application For Attorney Fees

On April 29, 1988, this Court reversed the final decision of the Secretary of Health and Human Services denying plaintiff's applications for a period of disability, Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Plaintiff has now filed an application for award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. 2412(d)(1)(A), to which defendant objects.

### I. THE EQUAL ACCESS TO JUSTICE ACT

The EAJA provides that "[a] court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A district court has the authority to award "reasonable" attorney fees, but is prohibited from awarding fees in excess of $75 per

hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

The Supreme Court has recently interpreted these provisions of the EAJA. *Pierce, Secretary of Housing and Urban Development v. Underwood,* — U.S. —, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court held that to be "substantially justified" the government's position must be justified to a degree that could satisfy a reasonable person. The Court noted that the standard is equivalent to the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit.

If a district court finds the position of the government was not substantially justified, attorney's fees in excess of the $75 cap may be awarded where there is "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). The Court held that the phrase refers to attorneys who are "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. *Pierce, supra.* Thus, where a limited number of attorneys having some distinctive knowledge or specialized skill relevant to the litigation are available, and such qualifications are necessary and can only be obtained at rates above the $75 cap, amounts above the limit are permissible. *Id.*

## II.  APPLICATION

■ In the instant case this Court finds that the position of the government was not substantially justified. The ALJ did not apply the legal standards of the Ninth Circuit when evaluating the plaintiff's case, and his error was compounded when the Appeal's Council adopted his decision. The ALJ's decision mischaracterized the medical evidence and contained legal error, so that the Secretary's insistence on defending the decision did not have a reasonable basis in law or fact. Because a reasonable person would not have adopted the Secretary's position, it was not "substantially justified" within the meaning of 28 U.S.C. § 2412(d)(1)(A).

■ Plaintiff's counsel, Mr. Friedman, has requested an hourly rate of $125, $50 above the statutory cap. He justifies it on the basis that there are a limited number of qualified attorneys available to handle social security cases, and that he is among those attorneys uniquely qualified. This Court finds that plaintiff's counsel has met his burden and established both his specialized skills and the limited availability of qualified attorneys. This Court notes that counsel's estimate of the limited number of attorneys available to handle social security cases is consistent with this Court's observation of the few attorneys who appear in virtually all of the social security cases on the Court's calendar. Mr. Friedman's expertise undoubtedly enabled him to complete work on this case in an efficient manner, therefore the requested rate of $125 for the 27.10 hours spent is an appropriate award.

For the foregoing reasons,

IT IS ORDERED:

Plaintiff's application for award of attorneys' fees is granted in the amount of $3,387.50.