**UNITED CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 325–84C.**

United States Claims Court.

Feb. 19, 1987.

Charles R. Svoboda, Kansas City, Mo., for plaintiff.

Alvin A. Schall, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, for defendant. R. Dale Holmes, U.S. Army Corps of Engineers, of counsel.

## ORDER

NETTESHEIM, Judge.

United Construction Company, Inc. ("plaintiff"), has moved pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(a), (d)(1)(A) (Supp. III 1985) (the "EAJA"), for an award of its costs and attorneys' fees and expenses. Defendant has opposed, plaintiff has responded, and the parties have been heard.

## FACTS

On June 30, 1986, this court awarded judgment for plaintiff in the amount of $225,799.05, plus interest in accordance with the Contract Disputes Act, 41 U.S.C. § 611 (1982), from March 8, 1984, until payment thereof. *United Construction Co. v. United States,* 10 Cl.Ct. 257 (1986). The underlying lawsuit was an intensely factual, disputed claim for an equitable adjustment in connection with an asphalt construction project. With the exception of two paragraphs, this court's analysis of the facts and law in its published opinion is factual. After trial there were no legal issues to resolve.

In a case involving the Civil Rights Attorneys' Fees Award Act, the Supreme Court said that the standards it set forth are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983). The Court admonished that "[a] request for attorneys' fees should not result in a second major litigation." *Id.* at 437, 103 S.Ct. at 1941. In this regard plaintiff's oral argument reflected a reanalysis of the evidence at trial. After carefully considering plaintiff's arguments, the court is of the view that its published opinion analyzes the evidence for purposes both of adjudicating plaintiff's claim on the merits and its EAJA application. Because the facts of the underlying litigation in this case cannot be summarized without risk of omission or deemphasis, the opinion reported at 10 Cl.Ct. 257 is incorporated herein by reference as the factual background for plaintiff's application. *Cf. Alger v. United States,* 741 F.2d 391, 394–95 (Fed.Cir.1984). The facts pertinent to plaintiff's application that are not discussed in the merits opinion concern defendant's counterclaim. Moreover, problems with an initial report of plaintiff's expert are mentioned only briefly. *See* 10 Cl.Ct. at 259. This order discusses these matters in detail.

## DISCUSSION

### 1. Costs

Plaintiff's application raises several meritorious considerations. Foremost among them is the significance of this court's decision in its merits opinion not to award costs to the prevailing party pursuant to RUSCC 54(d), which automatically assesses costs against the losing party unless the court orders differently. Plaintiff infers that costs were not awarded because the United States Claims Court follows the tradition of its predecessor United States Court of Claims not to award fees to the prevailing party. *See AABCO, Inc. v. United States,* 3 Cl.Ct. 700, 704 (1983) (citing cases); *Bailey v. United States,* 1 Cl.Ct. 69, 77, *rev'd on other grounds,* 721 F.2d 357 (Fed.Cir. 1983). At the close of evidence, the court indicated in a non-binding finding that an application under the EAJA likely would prove unsuccessful. By not awarding costs, the court reaffirmed its view. However, as this court said in *McCarthy v. United States,* 1 Cl.Ct. 446, 469 n. 24 (1983), 28 U.S.C. § 2412(a) invites a court to

revisit an award of costs on an EAJA application.

Awarding costs under the EAJA is permissive, although awarding attorneys' fees and expenses under the EAJA is mandatory unless the Government makes the requisite showing to defeat an award. The court modifies its earlier decision not to award costs. Plaintiff will be awarded that portion of its costs, if any, incurred in defending against the Government's counterclaim after discovery, since it is determined that the Government should pay plaintiff's attorneys' fees and expenses in connection therewith.

### 2. *Attorneys' fees and expenses*

■ The 1985 amendments to the EAJA, Act of August 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (codified at 5 U.S.C. § 504 and 28 U.S.C. § 2412), require that consideration be given to whether the position of the United States, including that taken by the agency at the administrative level, is substantially justified. Pub.L. No. 99–80, § 2, 99 Stat. 185 (codified at 28 U.S.C. § 2412(d)(2)(D)). However, an EAJA award compensates a prevailing party only for costs and attorneys' fees and expenses incurred in a civil suit or agency adjudication, including an appeal to a contract board of appeals, not those incurred during administrative consideration of a claim before litigation. 5 U.S.C. § 504(a)(1) (fees and expenses in agency adjudication); 28 U.S.C. § 2412(d)(1)(A) (fees and expenses in civil action); § 2412(d)(2)(E) (civil action includes appeal to agency board of contract appeals).

Consistent with the amendments' legislative history that substantial justification for the Government's position means more than reasonableness, *see* Equal Access to Justice Act, Extension and Amendment, H.R.Rep. No. 99–120, Part 1, 99th Cong., 1st Sess. 9–10, *reprinted in* 2 1985 U.S. Code Cong. & Admin.News 132, 138 (hereinafter "H.R.Rep. No. 99–120"), the Federal Circuit has held that " 'substantial justification' requires that the Government show that it was *clearly* reasonable in as-

serting its position, including its position at the agency level, in view of the law and the facts...." *Gavette v. OPM*, 785 F.2d 1568, 1579 (Fed.Cir.1986) (en banc) (footnote omitted; emphasis in original).

### a. *Agency position before case filed*

■ Defendant contends that the Government's position in rejecting plaintiff's claim at the agency level was clearly reasonable. The facts concerning presentation of plaintiff's claim to the United States Army Corps of Engineers (the "agency") are set forth in an order denying the Government's first of two motions for summary judgment, *United Construction Co. v. United States*, 7 Cl.Ct. 47, 49–50 (1984). A review of the record before the agency, especially the contracting officer's decision of April 26, 1982, shows that the position of the agency duplicates in major respects that of the Department of Justice in defending against plaintiff's claim in court. The only arguable failure to act on the part of the agency, *see* H.R.Rep. No. 99–120, 11, 2 1985 U.S.Code Cong. & Admin.News at 140, was a delay in allowing plaintiff to take tests at the sites of the failed construction. It is found that the delay is not traceable to the agency's decision to reject the claim, which was supported by many factors. The agency position was taken before plaintiff's expert gave his preliminary report. The extent to which that report did or did not detract from the reasonableness of defendant's litigation position is discussed in connection with the court action.

The record before this court indicating what was presented to the agency and the contracting officer's decision denying the claim (which was adopted as the basis for its denial of plaintiff's certified claim) supports a finding that the agency's denial, in the circumstances, was clearly reasonable. At that point in the fact development of the case, the agency knew that plaintiff had been able to perform successfully construction of asphalt parking lots and ramp areas in August and September 1980 when construction at the same areas in May and

June 1979 failed. Plaintiff argued to the agency, as it did before this court, that the significant difference in the conditions under which it performed in 1980 was the absence of heavy rainfall during the spring rainy season, although more rainfall was experienced during construction in 1980. What was determinative to the court—and had not persuaded the agency—was plaintiff's expert opinion that the timing of the 1979 construction doomed its successful completion, whereas even more rainfall in the drier summer months in 1980 had no effect on plaintiff's construction activities.

The agency made three investigations, before or after plaintiff submitted its claim, of the cause of the failed asphalt. The merits opinion discusses the salient points. 10 Cl.Ct. at 268–69. Two investigations were comprehensive. One faulted the contractor for poor subgrade preparation; the other faulted the pavement design, as well as the contractor's haste to finish the paving. The agency was clearly reasonable in not paying the claim on the basis of these investigations without the certitude that expert analysis could give it. Furthermore, the court noted that defendant's argument was "by no means insubstantial," but accepted plaintiff's expert analysis primarily on the basis of credibility. *See* 10 Cl.Ct. at 272. Defendant's expert analysis was plausible, but on the whole less convincing. It is not remarkable that the agency was unpersuaded before trial.

### b. *Litigation position after case filed*
#### 1) *Motions for summary judgment*

■ Plaintiff claims costs and attorneys' fees and expenses in connection with defending against two motions for summary judgment incident to trial. The disposition of the first motion, 7 Cl.Ct. 47, demonstrates that its denial was guided by precedents of the the Federal Circuit and Court of Claims. Nonetheless, the court deems that defendant's position was clearly reasonable in that its argument was jurisdictional and no court had applied the precedents to the facts presented. The court deferred ruling on whether plaintiff made a binding election to appeal its claim to a board of contract appeals. 7 Cl.Ct. at 52. In addition, although the court could not make a ruling on contractor delay, defendant acted prudently in raising that argument. *Id.* at 53–54.

On the deferred issue whether plaintiff had made an informed election when it submitted its November 1980 claim letter, subsequently it was ruled that plaintiff in this case had not received advice from the agency of its options under the Contract Disputes Act to seek agency review or file a lawsuit. *See* Transcript of Hearing, Jan. 18, 1985, at 13; order entered on Jan. 18, 1985. Defendant was clearly reasonable in pressing this argument in its first motion for summary judgment because plaintiff's actions in respect of election were equivocal over a lengthy period time, even if plaintiff ultimately was held not to have been informed of its rights.

Defendant's second motion for summary judgment pursued the argument that plaintiff had made an informed election because discovery revealed a document showing that plaintiff was aware of its options to appeal the decision of its claim or to sue in this court. This motion was withdrawn after plaintiff submitted an affidavit showing that plaintiff did not intend to make an election by letter of January 14, 1980. The affidavit raised a genuine issue of material fact which defendant recognized. This course of action was clearly reasonable.

#### 2) *Trial*

■ As this court indicated at the conclusion of trial, this was a case that needed to be tried. Defendant moved pursuant to RUSCC 41(b) after plaintiff's case in chief for an order of involuntary dismissal. That motion was not denied out of hand, because, as the court indicated in its bench ruling on the motion, problems with plaintiff's proof had been revealed. It was not until defendant completed its case that the comparative strength of plaintiff's expert opinion and weaknesses in some of defendant's expert and percipient witness testimony became evident. The court said as

much after trial in suggesting that the interests of both parties would be served in settling the case and in directing defendant to undertake good-faith settlement discussions. The remaining work was the court's, not the parties', as post-trial briefing was not required, since the court was not disposed to order post-trial briefing in the absence of plaintiff's view that it was necessary.

The pervasive theme of the opinion on the merits is that plaintiff's expert opinion was deemed the more credible and reliable. The court did not reach this view until the conclusion of trial. On this basis the Government was clearly reasonable in proceeding through trial. *See Temp Tech Industries, Inc. v. NLRB,* 756 F.2d 586, 590 (7th Cir.1985) (decision to litigate on issue that turned on credibility held substantially justified); *AABCO, Inc. v. United States,* 3 Cl.Ct. at 704 (trying case that turned on expert testimony substantially justified).[1]

Plaintiff argues, however, that the preliminary report of defendant's expert should have counseled defendant that its position could not be sustained. In 1985 defendant's expert was tasked to report on the cause of the construction failure, including "weaknesses in the Corps of Engineers position." The witness reported that "there is a possibility of ground water inflow under conditions of relatively high hydrostatic heat, ..." which condition "could favor the United Construction Company case." Respecting potential weaknesses he advised, *inter alia,* of the "general lack of quantitative evidence that parking lot subgrades were poorly compacted at the time of placement," that there were "sketchy Corps ... inspection logs," and that "[t]here was also a weakness in the Corps position in showing the Court that the design of pavement section [sic] at the lots was sufficient...."[2] By the time he

was deposed, defendant's expert attempted to explain away these problems. Had he not been able to make this attempt in deposition and at trial, the preliminary report might be viewed as damaging. Defendant's expert did come forward with a coherent, plausible, but ultimately unpersuasive explanation for the construction failure.

Finally, the case was close, as the court said during the proceedings, and the closeness of a litigated case has been held to militate against an EAJA award. *See Donovan v. DialAmerica, Inc.,* 757 F.2d 1376, 1389 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 246, 88 L.Ed.2d 255 (1986); *Ulrich v. Schweiker,* 548 F.Supp. 63, 66 (D.Idaho 1982).[3] It should be noted that in the one instance where defendant was able to offer a witness who observed plaintiff's actual construction activities during the initial asphalt failure, the testimony was the predicate for a ten percent reduction in the amount ultimately awarded to plaintiff.

Although it is concluded that defendant was clearly reasonable in trying this case, overall there were two issues in litigation that merit separate considerations.

#### c. *Separate issues*

In *Devine v. Sutermeister,* 733 F.2d 892, 896 (Fed.Cir.1984) (citing cases), the Federal Circuit approved the award of costs, fees and expenses for discrete phases of litigation, as well as issues within a phase. Thus, the position of the United States can be assessed with respect to multiple litigating positions in the agency and subsequent court proceedings. Before trial and up to the presentation of its case in chief, defendant urged a counterclaim that it dismissed at trial. By its counterclaim defendant sought the alleged cost savings for putting down base course in one four-inch lift at all but one site, instead of two two-inch lifts, as the contract had required.

---

**1.** The standard for substantial justification in these pre–1985 amendment cases was "reasonable based in law and fact." *See, e.g., Temp Tech Industries, Inc. v. NLRB,* 756 F.2d at 590 n. 4. The court has made its determination in the instant case under the standard of "clearly reasonable."

**2.** These citations come from the transcript of trial; the document was not introduced into evidence.

**3.** *See supra* note 1.

Defendant says that presuming a costs savings was reasonable. That is true. However, after deposing plaintiff's witness (not called because defendant dismissed the counterclaim), defendant should have known that laying asphalt is a function of how many times an hour it is pushed through an asphalt machine. It was not clearly reasonable to press the counterclaim beyond this point. Plaintiff was required to prepare its case after discovery and trial to rebut defendant's counterclaim. Plaintiff shall recover its trial preparation fees and expenses (and court costs, if any) in connection with preparing Don Eyman to defend against the counterclaim after Mr. Eyman's deposition had been concluded.

Defendant had also argued that plaintiff failed to test the subgrade material adequately for compaction despite overwhelming evidence that excavated material was too rocky to test under the contract's testing standards. The Government received plaintiff's reports that the subgrade was too rocky to test for months without registering any objection. *See* 10 Cl.Ct. at 269. However, the court deems that this issue fairly cannot be separated from the issue of whether the subgrade was compacted according to specifications. The Federal Circuit said in *Devine v. Sutermeister* "[W]hether a court should individually evaluate each motion or issue in a case is essentially a matter of judgment for the court, as this decision is clearly tied to the facts of each case." 733 F.2d at 896. Having tried and decided the case, the court concludes that this issue is not sufficiently unitary to be separated for an award. Even plaintiff's own expert testified about the two concepts in a related fashion.

### 3. *EAJA application*

 Plaintiff is entitled to its fees and expenses in connection with presenting its application under the EAJA. *Keely v. MSPB*, 793 F.2d 1273, 1275 (Fed.Cir.1986); *Gavette v. OPM*, 785 F.2d at 1580; *Devine v. Sutermeister*, 733 F.2d at 899.

### CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Plaintiff's application is granted insofar as it is awarded costs and attorneys' fees and expenses in connection with defendant's counterclaim after the date of Mr. Eyman's deposition and in connection with prosecuting its EAJA application.

2. By March 6, 1987, plaintiff shall submit to defendant a recomputation of its claim consistent with this order. The parties shall endeavor to resolve between themselves any dispute as to the amounts claimed. *See Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941.

3. If defendant agrees with the amount claimed, it should so signify by approving as to form a stipulation for the amount of award that shall be filed by March 20, 1987, to be entered by the Clerk of the Court.