COX CONSTRUCTION CO. and Haehn Management Co., a joint venture, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 658–85–C, 322–86–C.

United States Claims Court.

May 16, 1989.

Richard D. Corona, San Diego, Cal., for plaintiff.

Thomas W. Petersen, with whom were Asst. Atty. Gen., John R. Bolton and David M. Cohen, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

The plaintiff joint venture (Cox), having prevailed on the merits, has applied under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1986), for the attorneys' fees and expert witness expenses incurred in litigating this contract action. Plaintiff obtained judgments totalling $1,783,525 on April 27, 1988. Cox seeks an award of $251,681.35 ($155,612.44 for attorneys' fees and $96,068.91 for expert witness expenses). Plaintiff's application is granted in part and denied in part. The amount of plaintiff's award shall be determined according to principles stated below.

## I

The consolidated suits for which plaintiff now seeks EAJA monies arose from its contract with defendant for the construction of an engineering laboratory at the Naval Weapons Center in China Lake, California. The dispute concerned the adequacy of contract plans and specifications supplied by defendant with respect to (1) structural steel support for heating, ventilating and air conditioning (HVAC) equipment and (2) electrical circuit diagramming for environmental control systems. Trial was held in San Diego from April 12 to April 23, 1988. At the conclusion of trial, the court ruled in favor of plaintiff on both issues. Soon thereafter, the parties filed a joint stipulation on quantum, and judgment was entered accordingly. There was no appeal.

## II

Cox asserts, as it must to recover under EAJA, that it is a "prevailing party" meeting the net worth eligibility requirements set forth in 28 U.S.C. § 2412(d)(2)(B) and that the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Cox seeks an award of attorney fees computed at rates higher than EAJA's $75–per–hour cap based on (1) cost of living increases experienced in southern California and (2) the alleged presence in this case of a "special factor" within the contemplation of 28 U.S.C. § 2412(d)(2)(A)(ii).

The government concedes that Cox is a "prevailing party" and no longer questions Cox's satisfaction of EAJA's net worth requirements.[1] Nevertheless, defendant contests Cox's entitlement to EAJA monies since, it asserts, the government's position was "substantially justified." For purposes of substantial justification analysis, defendant urges the court to divide its liti-

---

1. Subsequent to maturation of the fee application, Cox filed new affidavits concerning net worth and number of employees as of the date each of these consolidated cases was filed. The affiants were officers of Cox and Haehn, respectively, who possessed knowledge of their respective companies' books and records. The new affidavits revealed that *even when combined* the net worth and number of employees of Cox and Haehn on each relevant date fell within the limits of 28 U.S.C. § 2412(d)(2)(B).

gating position into four parts. Further, should the court find Cox entitled to an award, defendant disputes the hourly rates that Cox seeks, asserting (1) that Cox is not entitled to a cost of living adjustment (COLA) to its fees, (2) that, in any event, Cox has not properly calculated the COLA and (3) that no "special factor" which might justify an hourly fee higher than EAJA's $75 rate is present in this case. Finally, the government contends that even if Cox were otherwise entitled to an EAJA award, its application must be dismissed based on defects in its itemization of attorney hours.

### III

The EAJA provides:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances would make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The parties' dispute consists of entitlement as well as quantum issues. The quantum questions are addressed in Part IV below. With respect to entitlement, there are three areas of contention: (1) Whether defendant's positions were "substantially justified," (2) whether and to what extent the EAJA permits recovery of fees for pre-litigation efforts, and (3) whether plaintiff's application must be denied on grounds of inadequate fee itemization.

### A

■ The Supreme Court has recently construed the EAJA's phrase "substantially justified" to mean

'justified in substance or in the main,'— that is, justified to a degree that could satisfy a reasonable person [, which] is no different from the 'reasonable basis both in law and fact' formulation [heretofore] adopted by [many of the Circuits].

*Pierce v. Underwood*, — U.S. —, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

The burden of demonstrating substantial justification rests with the government. *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1465–66 (Fed.Cir. 1986), *quoting* H.R.REP. 1418, 96th Cong. 2d Sess. 18, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984, 4997.

■ Whether the government's position should be divided into separate parts for purposes of substantial justification analysis "is essentially a matter of judgment for the court, as this decision is closely tied to the unique facts of each case." *Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed.Cir. 1984); *accord Keely v. Merit Sys. Protection Bd.*, 793 F.2d 1273, 1276 (Fed.Cir. 1986); *McCarthy v. United States*, 1 Cl.Ct. 446, 459 (1983). In exercising this discretion, a court must ask whether the proposed division of defendant's position would yield portions that are analytically " 'sufficiently significant and discrete to be treated as ... separate unit[s]' for purposes of [a fee] award." *Devine v. Sutermeister*, 733 F.2d at 896, *quoting Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.1974).

Defendant urges that its litigating position is divisible into four parts, each of which must be separately assessed. The court's familiarity with this litigation, however, and an examination of the record in light of the principles just stated, have persuaded that the issues simply do not lend themselves to such quadruple dissection. Instead, defendant's position shall for evaluative purposes be divided into but two parts.

■ Defendant has persuaded that its positions with respect to the HVAC steel and control wiring issues can be evaluated separately. As defendant correctly observes, these issues "involved separate subcontractors, separate experts, ... were submitted by [the] plaintiff as separate claims, and ... were submitted to the Court in separate complaints filed seven months apart" (Def.Opp. at 11). Accordingly, the attorney fees and expert witness expenses related to each of these two issues should admit of easy allocation. Phrased another way, the HVAC steel and

control wiring claims are "sufficiently ... discrete to be treated as ... separate unit[s]" for EAJA award purposes. *Devine v. Sutermeister*, 733 F.2d at 896; *see Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939, 40, 76 L.Ed.2d 40 (1983).

Defendant seeks further subdivision of each issue into its liability and damages components. Unlike the situation presented in *Ellis v. United States*, 711 F.2d 1571 (Fed.Cir.1983), where the government's liability and damages positions were evaluated separately, these proceedings were not divided into liability and damages phases. Here, given the extensive commingling of these components in counsels' preparation and presentation of their cases, any attempt to allocate the efforts expended on liability and damages would be impractical. Practical considerations carry great weight in this context, since a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941; *Keely v. Merit Sys. Protection Bd.*, 793 F.2d at 1276.

■ Concerning the HVAC steel claim, it is concluded that defendant's position lacked substantial justification. This was the court's preliminary conclusion (stated in open court at the close of trial in response to a question from defense counsel) and nothing subsequently offered by defendant has changed that view. The support steel for the HVAC units should have been but was not shown in the contract plans; it ordinarily would have been there, and a contractor should have been able to rely on its being there. This critical omission, non-obvious to the reasonable bidder, resulted in delays and damages. Although almost everyone on the government side had an initial reaction that the contractor's claim was valid, the government nevertheless took the position that, in effect, plaintiff had to hire its own design structural engineer to complete the plans. The conclusion is inescapable that defendant's position on the HVAC steel issue was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A); *see Pierce v. Underwood*, 108 S.Ct. at 2550.

■ With respect to the control wiring claim, defendant has sustained its burden of demonstrating substantial justification. At trial, the government presented credible testimony of three experts in support of its position on this claim. Although plaintiff ultimately prevailed, its victory on this issue "cannot be described as foreordained ... [as of] the time the government litigated the case." *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1392 (Fed.Cir.1982). Instead, plaintiff's wiring claim triumph resulted simply from its expert having been more persuasive than defendant's experts. Under these circumstances, defendant's position cannot be deemed unreasonable.

### B

The second entitlement issue raised by the instant application concerns recoverability of pre-litigation fees and expenses. Cox seeks recovery of its fees and expenses beginning with those incurred in April 1984; however, the complaints initiating the Claims Court portion of this litigation were not filed until November 1985 (for the wiring claim) and May 1986 (for the HVAC steel claim). Defendant urges that most of the pre-Claims Court sums that Cox seeks cannot be recovered under EAJA.

■ It is well-established that EAJA authorizes a prevailing party's recovery of only such fees and expenses as were incurred in "civil actions" (28 U.S.C. § 2412(d)(1)(A)) and agency "adversary adjudications" (5 U.S.C. § 504(a)(1)). The Act does not permit recovery of those fees and expenses attendant to plaintiff's "prosecution of its certified claim before the contracting officer." *Keyava Constr. Co. v. United States*, 15 Cl.Ct. 135, 138 (1988). Nor can a successful EAJA applicant recover "those [fees otherwise] incurred during administrative consideration of a claim before litigation." *United Constr. Co. v. United States*, 11 Cl.Ct. 597, 599 (1987). Accordingly, the portion of Cox's applica-

tion that seeks recovery of such sums must be denied as a matter of law.[2]

## C

Defendant contends that Cox's application should be denied in toto because it lacks sufficient detail in its itemization of attorney hours. Specifically, defendant complains that Cox (1) requests compensation for its time at various hourly rates without providing any explanation for the different rates, (2) in some instances fails to itemize the number of hours and billing rates of attorney time for which it seeks compensation and (3) generally fails to provide descriptive detail sufficient to allow determination of which attorney time relates to compensable efforts and which does not.

■■■ Unquestionably, the EAJA requires that anyone seeking an award of attorneys' fees and other expenses submit "an itemized statement ... stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B). The "itemized statement" must be sufficiently detailed to show "specific task[s] performed." *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987). Moreover, "contemporaneous records of the exact time spent by attorneys on a case [as well as] their status and usual billing rates" are "essential to support [an EAJA] claim." *Owen v. United States,* 861 F.2d 1273, 1275 (Fed.Cir.1988). Finally, the Federal Circuit has "reject[ed] unequivocally any suggestion that the Claims Court ha[s] an obligation to reconstruct the bills for [an EAJA applicant]." *Naporano Iron & Metal Co.,* 825 F.2d at 405.

■■ Plaintiff's itemization is flawed in some respects and in its present state could not in its entirety support an attorney fee award. An explanation for the different billing rates is essential yet none appears. No item of attorney time can be compensated under the Act without a description that includes the number of hours and the billing rate yet some items are not so described. Further, the descriptions provided must permit compensable time (in this case, such time would include that spent on Claims Court litigation of the HVAC steel claim) to be segregated from any non-compensable time (here, time spent on the wiring claim), yet making such an allocation based on the itemization provided with the application would be quite difficult.

However, because the itemization defects are likely curable, it would be unfair to dismiss Cox's application in toto at this stage on itemization grounds. This court's recent observation in *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 440 (1989), is equally true here:

> With respect to the alleged inadequacy of [plaintiff's] fee application, the Supreme Court's unequivocal directive that 'a request for attorney's fees should not result in a second major litigation' is particularly apt.... [Plaintiff's] application is clearly adequate to determine not only its entitlement to fees but the parameters of its recovery. Requiring [plaintiff] to re-file now, after the application has matured, for a new round of responsive pleading based merely on [curable itemization defects] would certainly transgress the Court's proscription just quoted.

Accordingly, Cox will be afforded an opportunity to cure the itemization defects when it confers with defendant pursuant to Part V below. *See Skip Kirchdorfer, Inc. v. United States,* 16 Cl.Ct. 27, 33 (1988) (plaintiff permitted to provide breakdown of its fees and expenses *subsequent* to court's finding that defendant's position was unjustified). Of course, should there be segments of attorney time for which Cox cannot cure itemization defects, those segments will not be compensable since the "statutory consent to fee awards requires specificity for an award to be made at all."

---

**2.** Defendant suggests that the only pre-complaint efforts for which EAJA would permit compensation are those related to drafting the complaint (Def.Opp. at 31). We disagree. Certainly fees for legal and factual research preparatory to Claims Court litigation constitute "fees ... incurred by [a] party in [a] civil action." 28 U.S.C. § 2412(d)(1)(A).

*Naporano Iron & Metal Co.*, 825 F.2d at 405.

### D

■ Two other entitlement matters merit comment. First, Cox is entitled to recover the attorney fees incurred preparing its EAJA application since it is otherwise entitled to recover. *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir. 1985); *Devine v. Sutermeister*, 733 F.2d at 899; *Kunz Constr. Co.*, 16 Cl.Ct. at 438; *McCarthy*, 1 Cl.Ct. at 463. Second, Cox shall recover its expert witness expenses related to the HVAC steel claim and the damages issues, but not those incurred on the wiring claim. *See* 28 U.S.C. § 2412(d)(2)(A)(i).

### IV

Concerning the quantum issues raised by the parties, there are three areas of contention: (1) Whether Cox has shown a "special factor" that justifies the award of attorney fees above EAJA's $75 rate, (2) whether Cox is entitled to a cost of living adjustment (COLA) to its fees and if so, how the COLA should be calculated, and (3) whether Cox can recover EAJA's maximum rate for services billed at rates below $75 per hour.

### A

The EAJA offers the following directions concerning hourly rates:

> [A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff bears the burden of demonstrating the existence of any "special factor" which would "justif[y] a higher fee." *Id.; Kunz Constr. Co.*, 16 Cl.Ct. at 438; *see Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323–34 (7th Cir.1985); *Wall Industries v. United States*, 15 Cl.Ct. 796, 797 (1988); *Keyava Constr. Co.*, 15 Cl.Ct. at 139.

■ In this case, Cox urges that it is entitled to a "special factor" upward adjustment to the EAJA rate because (1) plaintiff's attorneys are "recognized specialists in the area of Federal Procurement Construction law" and have over twenty-four years of experience in that field, (2) this case was "multi-faceted and extremely complex" and required counsel to have a working knowledge of, *inter alia*, accounting, structural steel, construction and wiring principles; counsel had to (3) understand and prepare for litigation a novel method of delay damages calculation, (4) utilize its federal procurement law expertise during the prelitigation phase, (5) be well-versed on the subject matter of Cox's six expert witnesses' testimony and know enough to cross-examine competently defendant's experts and (6) make an extensive time commitment. In its reply, Cox adds that the "special factor" cases cited by defendant are distinguishable and attaches four affidavits in support of its earlier assertions.

In *Pierce v. Underwood*, 108 S.Ct. at 2553–55, the Supreme Court discussed EAJA's "special factor" language at some length. Construing "the limited availability of qualified attorneys for the proceedings involved," 28 U.S.C. § 2412(d)(2)(A)(ii), the Court stated:

> [This phrase] must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Pierce v. Underwood*, 108 S.Ct. at 2554.

The Supreme Court's holding raises two questions concerning this case. Is federal

procurement law "an identifiable practice specialty" within the contemplation of *Pierce,* and, if so, was such a "specialization" essential to the competent litigation of plaintiff's case?

The answer to the first question is unclear. In a generic sense, concentration in almost any area of law which can be identified with a commonly understood tag connoting its boundaries would qualify as an "identifiable practice specialty." *See Esprit Corp. v. United States,* 15 Cl.Ct. 491, 494 (1988) ("each practice group could argue that it possesses a 'specialized skill'"). However, *Pierce*'s choice of "patent law" as an example of a specialty probably indicates an intent to be more restrictive in its interpretation of "limited availability of qualified attorneys." 28 U.S.C. § 2412(d)(2)(A)(ii). Further, since *Pierce* was decided, two judges of this court have declined invitations to recognize particular "practice specialties" as constituting "special factors" justifying an increase in attorneys' fees. *Doe v. United States,* 16 Cl.Ct. 412, 421 (1989) (Harkins, S.J.) ("The area of Federal immigration law and custom law involved in this case does not constitute the type of specialized skill that would justify an increase in attorney fees"); *Esprit Corp.,* 15 Cl.Ct. at 494 (Margolis, J.) ("the area of federal procurement law involved in this case [is not] the type of specialized skill that justifies an increase in attorney's fees"). *But see McDonald v. Bowen,* 693 F.Supp. 1298, 1306 (D.Mass.1988) (specialization in "the law of public assistance benefits" is an EAJA "special factor" justifying higher fee); *Wilson v. Bowen,* 691 F.Supp. 1257, 1262 (D.Ariz.1988) ("limited number of qualified attorneys available to handle social security cases" justified "special factor" increase to EAJA rate).

Even assuming that federal procurement law is the kind of "identifiable practice specialty" contemplated by *Pierce,* plaintiff has failed to show that such specialization was *"required* to *competently* litigate [its] case." *Esprit Corp.,* 15 Cl.Ct. at 494 (emphasis added). Instead, the contentions in plaintiff's application and supporting affidavits are merely to the effect that either (1) no other San Diego attorneys could have

litigated this case *the way it was litigated* or (2) plaintiff's attorneys exhibited a high degree of that "lawyerly knowledge and ability [that is] useful in *all* litigation." *Pierce v. Underwood,* 108 S.Ct. at 2554 (emphasis added). For example, plaintiff's lead counsel, Mr. Corona, stated:

In my view, had Plaintiff not had the benefit of the specialized expertise generated by this office to develop documents and present its case as well as defend the Defendant's contentions, Plaintiff would not have *succeeded to the extent it did* on the merits and on damages.

App. to Pl.Rep. at 37 (emphasis added). And the president of Forward Associates, a firm plaintiff retained to conduct its delay damages calculations, stated:

Forward used the efficiency factors established by Hill International, specifically the Measured Mile approach, to isolate the effects of delays and disruptions found on the as built CPM.... This method was developed by Forward Associates, and had not been used before.... Mr. Corona's understanding of [c]onstruction and the techniques used by Forward Associates made it possible for us to receive guidance at the highest level of technical detail.... This in turn made it possible to forcefully and clearly, and ultimately successfully, present the story to the United States Claims Court.

App. to Pl.Rep. at 41–42.

Certainly the background and knowledge of plaintiff's attorneys helped them to implement their litigation strategy effectively. Certainly it assisted them in presenting their chosen damages theory. But in order to show the "special factor" of "limited availability of qualified attorneys," plaintiff must demonstrate that it is the "nature of the case," not the nature of the litigation strategy, that "renders the proceedings capably handled by only a limited number of attorneys." 28 U.S.C. § 2412(d)(2)(A)(ii); *Abel Converting, Inc. v. United States,* 695 F.Supp. 574, 580 (D.D.C.1988).

*Pierce* succinctly stated why the bulk of Cox's "special factor" contentions cannot be relied upon:

The 'novelty and difficulty of issues,' ... the 'work and ability of counsel' and 'the results obtained' ... are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.... It was an abuse of discretion for the District Court to rely on these [in finding special] factors.

*Pierce v. Underwood,* 108 S.Ct. at 2554. Thus, neither the "novelty" of plaintiff's damages calculation theory, nor the "complexity" of the case, nor the recognized prowess of plaintiff's counsel, nor, finally, the high degree of success obtained could warrant the finding of a "special factor" justifying a higher attorney fee award. Similarly, the requirements of becoming well-versed in the subject matter of experts' testimony and gaining facility with various principles certainly constitute "factors applicable to a broad spectrum of litigation" and therefore could not support a "special factor" finding. *Id.* In sum, plaintiff has not demonstrated the existence of a "special factor" in this case.

### B

■ EAJA authorizes an upward adjustment of the $75 hourly rate based on cost of living increases. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). The government's contention that Cox is not entitled to such an adjustment is without merit. The Consumer Price Index (CPI) for San Diego (the locale in which legal services were rendered) demonstrates conclusively that the area experienced increases in the cost of living between EAJA's original effective date of October 1, 1981 and the dates compensable legal services were rendered. Cox shall therefore receive a COLA. *See, e.g., Wilkett v. I.C.C.,* 844 F.2d 867, 875 (D.C.Cir.1988) (awarding COLA based on increases in Washington, D.C. area); *Doe,* 16 Cl.Ct. at 421 (awarding COLA based on increases in national CPI); *Kunz Constr. Co.,* 16 Cl.Ct. at 438–39 (awarding COLA based on increases in San Antonio); *Keyava Constr. Co.,* 15 Cl.Ct. at 139–40 (awarding COLA based on increases in San Francisco area).

With respect to calculation of the COLA, defendant disputes Cox's figures and urges the use of national CPI figures instead of those for San Diego or Los Angeles, since the Claims Court "has national jurisdiction and its bar is a national bar" (Def.Opp. at 28). However, in view of the diverse nature of various cities' and regions' economies, it is concluded that recognizing the cost of living increases actually experienced by the EAJA applicant is the fairer course. Accordingly, the court adopts the CPI figures for San Diego.

■ Defendant urges that the COLA should be made from the EAJA baseline date of October 1981 only "to the date the fee was incurred" rather than to the date of the EAJA application (Def.Opp. at 27). This position is adopted. *See Kunz Constr. Co.,* 16 Cl.Ct. at 439, *citing Wilkett v. I.C.C.,* 844 F.2d at 875. The applicable calculations are set forth in Tables I–IV of the Appendix to this opinion.

### C

■ The government urges that Cox cannot receive EAJA's $75 per hour rate for time billed at hourly rates lower than $75. The statute provides:

[T]he amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of the services furnished, *except* that ... (ii) attorney fees shall not be awarded in *excess* of $75 per hour....

28 U.S.C. § 2412(d)(2)(A) (emphasis added). Clearly, Congress intended the $75 rate as a cap, not a floor. Where the "prevailing market rates" for certain services are less than the cap, EAJA does not dictate that those services must nevertheless be compensated at the cap. In this case, plaintiff has offered no evidence that it was charged less than the prevailing market rate for the services in question. Accordingly, with respect to compensable time billed at less than $75 per hour, plaintiff shall receive only the rates actually charged. *See generally Devine v. National Treasury Employees Union,* 805 F.2d 384, 388 (Fed.Cir. 1986).

## V

Based on the foregoing, plaintiff's EAJA application is DENIED as to fees and expenses incurred prosecuting its control wiring claim and incurred during its agency-level efforts, but is GRANTED as to fees and expenses incurred for its other efforts in this litigation, including those allocable to the instant fee application.

The award shall be based on the hourly rates actually charged except that attorney hourly rates above $75 shall be reduced to a cost-of-living-adjusted $75 per hour. The COLA is to be calculated from October 1981, the original effective date of EAJA, to the dates fees were incurred, using figures from the Consumer Price Index for San Diego. The applicable figures appear in Table IV of the Appendix.[3]

The parties shall confer in an effort to reach agreement on the precise amount of the award based on the guidelines set forth herein. Not later than June 19, 1989, the parties shall file a joint status report on the progress of their efforts to reach agreement on the amount of an award.

## APPENDIX

Table I. Consumer Price Index for All Urban Consumers (CPI–U)[1] in San Diego, California.[2] Dates in this and subsequent tables represent period of legal services for which plaintiff is entitled to compensation. (*Consumer Price Index point for EAJA baseline date of October 1, 1981 = 92.8*).

|      | Jan. | Mar. | May | July | Sep. | Nov. |
|------|------|------|------|------|------|------|
| 1986 | 112.9 | 112.1 | 113.2 | 113.3 | 114.1 | 114.6 |
|      | First Half | | | Second Half | | |
| 1987 | 116.6 | | | 118.3 | | |
| 1988 | 121.9 | | | 125.0 | | |

Table II. Percent change in consumer prices [3] in San Diego calculated from EAJA baseline date (October 1, 1981) to dates within period of compensable legal services.

|      | Jan. | Mar. | May | July | Sep. | Nov. |
|------|------|------|------|------|------|------|
| 1986 | 21.65 | 20.79 | 21.98 | 22.09 | 22.95 | 23.49 |
|      | First Half | | | Second Half | | |
| 1987 | 25.64 | | | 27.47 | | |
| 1988 | 31.35 | | | 34.69 | | |

Table III. Cost of living adjustment (COLA) to EAJA's $75 per hour attorney fee rate for legal services rendered in San Diego during periods indicated based on percentages in Table II above. (Figures represent dollars.)

|      | Jan. | Mar. | May | July | Sep. | Nov. |
|------|------|------|------|------|------|------|
| 1986 | 16.24 | 15.59 | 16.48 | 16.57 | 17.21 | 17.62 |
|      | First Half | | | Second Half | | |
| 1987 | 19.23 | | | 20.60 | | |
| 1988 | 23.51 | | | 26.02 | | |

Table IV. Applicable maximum (cost-of-living-adjusted) hourly attorney fee rates during period of compensable services derived by adding amounts in Table III to

---

**3.** The parties may agree upon and adopt a single percentage COLA for all such recoverable time. *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 440 n. 9 (1989); *see also Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 140 (1988).

**1.** The CPI–U covers approximately 80% of the population, including wage earners and clerical workers, professional, managerial and technical workers, the self-employed, short-term workers, the unemployed, retirees and others not in the labor force. The index is based on prices of food, clothing, shelter, fuel, transportation fares, dentists and doctors fees and other goods and services that people buy for day-to-day living. In calculating the index, price changes for the various items in the location in question are averaged with weights which represent their importance in the spending of the analyzed population group. Bureau of Labor Statistics, U.S. Department of Labor, *CPI Detailed Report Data for December 1988,* at 109 (1989).

**2.** San Diego is the locale where legal services were rendered in this case. Through 1986, CPI provided bimonthly data for San Diego; however, beginning in 1987, only semi-annual figures are available.

**3.** Movements of the index from one month to another are expressed in percent changes rather than index point changes. For example, the percent change in index points from October 1, 1981 (EAJA's baseline date) to January 1986 is calculated as follows:

| Index Point Change | |
|---|---|
| CPI for January 1986 | 112.9 |
| Less October 1981 Index | 92.8 |
| Equals Index Point Change | 20.1 |

| Percent Change | |
|---|---|
| Index Point Difference | 20.1 |
| Divided By October 1981 Index | 92.8 |
| Equals | 0.2165 |
| Results Multiplied By 100 | 0.2165 × 100 |
| Equals Percent Change | 21.65 |

U.S. Department of Labor, Bureau of Labor Statistics, *CPI Detailed Report Data for December 1988,* at 109 (1989).

EAJA. rate of $75. (Figures represent dollars.)

| | Jan. | Mar. | May | July | Sep. | Nov. |
|------|-------|-------|-------|-------|-------|-------|
| 1986 | 91.24 | 90.59 | 91.48 | 91.57 | 92.21 | 92.62 |

| | First Half | Second Half |
|------|------------|-------------|
| 1987 | 94.23 | 95.60 |
| 1988 | 98.51 | 101.02 |