**WEAVER–BAILEY CONTRACTORS, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 137–87C.**

United States Claims Court.

Dec. 2, 1991.

Charles Darwin Davidson, with whom was Clark W. Mason, Little Rock, Ark., for plaintiff.

Paul D. Langer, with whom were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

SMITH, Chief Judge.

Weaver–Bailey Contractors, Inc., seeks an award of its attorneys' fees and expenses in the amount of $55,226.10 under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412 (1988). For the reasons set forth below, the court finds Weaver–Bailey is entitled to recover $41,744.69 under the EAJA.

## FACTS

The relevant facts are set forth in an earlier published opinion, *Weaver–Bailey Contractors, Inc. v. The United States*, 19 Cl.Ct. 474 (1990), and are repeated only to the extent necessary here. In July, 1984,

Weaver–Bailey and the government entered into a contract for the improvement of the recreation area surrounding Arcadia Lake in Edmond, Oklahoma. Most of the job consisted of earthwork, such as cutting slopes and filling in low areas. The project was delayed when it was discovered that the United States Corps of Engineers (Corps) significantly underestimated the unclassified excavation[1] necessary to complete the earthwork.

The case came before the court as a direct access appeal from the contracting officer's denial of Weaver–Bailey's request for an equitable adjustment. The central issue in litigation was which party was responsible for the delay in contract completion. The court found that the government was solely responsible for the delay in performance of the contract due to the Corps' underestimation of the amount of unclassified excavation for the job. On February 9, 1990, a judgment in the amount of $469,041.00, with interest under the Contract Disputes Act, was entered in favor of Weaver–Bailey.

Defendant filed a Motion for Reconsideration on March 5, 1990, which was denied on April 17, 1990. Defendant then appealed to the United States Court of Appeals for the Federal Circuit. On October 2, 1990, the defendant's appeal was dismissed. Weaver–Bailey then filed its application for attorney's fees and other expenses under EAJA.

## DISCUSSION

### 1. SUBSTANTIAL JUSTIFICATION

In order to be eligible for an award of attorney fees, Weaver–Bailey must first show that it was the prevailing party in the litigation and that it meets net worth and employment requirements. These threshold requirements are not in dispute; Weaver–Bailey is a prevailing party within the meaning of EAJA, has a net worth of less than $7,000,000 and employs fewer than 500 people.

---

**1.** "Unclassified excavation" is earth of unknown composition which the contractor agrees to

move at a given price per cubic yard. *Weaver–Bailey,* 19 Cl.Ct. at 475, n. 1.

In addition to these threshold requirements, the government's position in the litigation must not have been substantially justified. "Substantially justified" does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person.... [The Government's position must have a] reasonable basis both in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Moreover, the fact that plaintiff prevailed does not necessarily result in a grant of attorney fees.

"[T]he EAJA was not intended to be an automatic fee-shifting device in cases where the [plaintiff] prevails ... [S]ubstantial justification is to be decided case-by-case on the basis of the record." *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed.Cir.1988). In the instant case, an examination of the record and review of precedent make it clear that the government's position was not substantially justified.

The government has the burden of demonstrating substantial justification for its position. *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 32 (1989), *citing Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1465–66 (Fed.Cir.1986). Placing the burden on the government to prove the reasonableness of its actions "encourages parties to contest action they believe to be unreasonable and thereby serves to refine public policy." *Gavette,* 808 F.2d at 1465, quoting H.R.REP. No. 1418 at 18, 1980 U.S.CODE CONG. & AD. NEWS at 4953, 4997. In a sense, an EAJA applicant's success on the merits presents a prima facie showing of entitlement to attorney fees which shifts the burden to the government to prove substantial justification.

Here, defendant argues that its position was reasonably based in fact and law. The government had two defenses. First, the government maintained that this was not a delay case; and, second, assuming there was a delay, the government was not its sole cause. The basis for the first argument was that Weaver–Bailey projected that it would use the entire time allotted under the contract (until February 13, 1985) to complete performance. In addition, the completion date was extended due to inclement weather and Weaver Bailey completed performance within that extended period. However, Weaver–Bailey argued that it intended to complete performance prior to the original February completion date to avoid doing earthwork during the winter.

A contractor may recover damages for government-caused delay to the contractor's early completion of performance if the contractor establishes that it could realistically complete the project early. B. BRAMBLE & M. CALLAHAN, CONSTRUCTION DELAY CLAIMS § 4.2 (1987). The government introduced evidence, namely two construction progress charts, to dispute Weaver–Bailey's intent and ability to complete the project early. Weaver–Bailey's charts projected not an early completion date, but rather a completion date in accordance with the contract.

As evidence of its planned early completion, Weaver–Bailey relied on the testimony of Marion Stephenson, the project manager, who testified that he told Corps personnel of his intent at the pre-work conference. This testimony was contradicted by the Corps personnel who testified that they did not recall Mr. Stephenson ever making such a statement. However, as the court noted,

[t]he proper focus is not whether Weaver–Bailey informed the government, at the inception of the contract, that it *intended* to complete the project before winter; rather the focus should be on whether Weaver–Bailey *would have* completed the project early, but for the government-caused delay.

*Weaver–Bailey, 19 Cl.Ct.* at 479 (emphasis in the original). *See also Metropolitan Paving Co. v. United States,* 325 F.2d 241, 163 Ct.Cl. 420, 423 (1963) (Whether the parties planned an early completion makes little difference; important inquiry is whether the government's actions prevent-

ed the contractor from early completion). The court found that Weaver–Bailey would have completed the project early, but for the Corps' underestimation of the amount of required unclassified excavation. *Id.*

Defendant now argues that the court's finding that Weaver–Bailey established early completion rested on credibility findings of the witnesses and evidence. Therefore, the court is not precluded from finding here that the government's position in this respect was substantially justified. *See United Constr. Co., Inc. v. United States,* 11 Cl.Ct. 597, 601 (1987) (decision to litigate issue which turned upon credibility was substantially justified). The court indeed found that Mr. Stephenson was both lucid and credible. *Id.* at 478. More importantly, however, the court did not find defendant's position that Weaver–Bailey intended to continue the earthwork through an Oklahoma winter to be plausible or reasonable.[2] The court cannot now find that the government's position in this respect was substantially justified.

The government's second and principal defense was that Weaver–Bailey failed to establish that the additional excavation was the sole cause of its alleged delay in completing the project. A party cannot "recover for delay caused by the government when that delay is concurrent with other delay not caused by the government." *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 700 (1984); *accord William F. Klingensmith, Inc. v. United States,* 731 F.2d 805, 809 (Fed.Cir.1984). The government argued that the delay to the project completion was not attributable to the excavation overruns, but to other activities, particularly the rip-rap placement.[3]

The government introduced evidence prepared by David Berkey, a claims analyst for the Corps, that attempted to show that the rip-rap placement, and not the overrun, was the critical project activity delaying the job. To do this, Mr. Berkey performed a critical path analysis. A critical path activity is one which, if allowed to grow in duration, will cause the overall time required to complete the project to increase. *Weaver–Bailey,* 19 Cl.Ct. at 481. By introducing evidence from the critical path analysis, the government attempted to show that the unclassified excavation was not a critical path activity and that even if the unclassified excavation was delayed, there was sufficient "float" time to complete the project without delay.[4] The court rejected Mr. Berkey's critical path analysis, finding that it merely distracted from defendant's real argument that Weaver–Bailey should have "spent more time in the fall protecting the already-excavated areas from erosion, and less time trying to complete the unclassified excavation." *Id.* at 481–82.

Defendant argued that Weaver–Bailey caused the delay by not using phased-construction methods on the project. In phased construction, the rip-rap placement would have followed closely behind the unclassified excavation in order to prevent slope deterioration during the winter months. However, as the court noted, Weaver–Bailey could not be faulted in its handling of the unclassified excavation. *Id.* at 482. Had it not been for the Corps' underestimation of the unclassified excavation, there would have been no need for phased construction as the project would have been completed before the winter weather could effect the slopes. Thus, de-

---

**2.** As the court pointed out:

> ... no rational contractor would plan to do earthwork through an Oklahoma winter. Excavation operations become difficult, if not impossible, once the winter rain and snow set in; the earth becomes too heavy or is frozen, and for all intents and purposes, is unworkable. Furthermore, the often bitter windchill in Oklahoma in January and February, sometimes as low as 20 degrees below zero, can make work outside dangerous.

*Weaver–Bailey,* 19 Cl.Ct. at 478.

**3.** Rip-rap is a foundation or facing in water or soft ground made of loose rock of specified size. McGraw-Hill Dictionary of Scientific and Technical Terms 1375 (2d ed. 1978). In this case, Weaver–Bailey was to create breakwater areas by placing rip-rap on the slopes bordering Arcadia Lake in Edmond, Oklahoma.

**4.** Unlike a critical path activity, an activity with float time may extend to a certain duration without adversely effecting the deadline of the project.

fendant's argument ignored the impact of its own mistake in the contract specifications.

Defendant also argued that any delay in laying rip-rap was attributable to Weaver–Bailey's subcontractor, and not the government. However, the court found that the government was responsible for this delay due to faulty contract specifications. The contract called for 15–inch rip-rap, which is difficult to obtain because it is not standard size. Eventually, the Corps recognized its error and allowed for standard rip-rap. Defendant's later argument that this error was attributable to the sub-contractor again ignored the significance of the government's inadequate contract specifications.

It is clear that the government was not substantially justified in its litigation position. Defendant's litigation position would have required the court to overlook the government's errors in the contract specifications. This was clearly a delay case as Weaver–Bailey would have completed its performance before winter, but for defendant's underestimation of the unclassified excavation. Moreover, the delay in this case was solely attributable to the government. Defendant's attempts to place responsibility for the delay on Weaver–Bailey or its subcontractor were not substantially justified as they simply were not reasonably based in law or fact. *Pierce v. Underwood*, 487 U.S. at 565, 108 S.Ct. at 2550.

## 2. ATTORNEY FEES AND EXPENSES

As plaintiff has met all requirements for an award of attorney fees under the EAJA, the court must next determine the amount to be awarded. As a general rule, plaintiff is entitled to "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A). Weaver–Bailey claims it should be awarded at least $33,-465.00 for 446.2 hours at the statutory rate of $75.00 per hour, plus a cost of living adjustment. In addition, Weaver–Bailey seeks $21,761.10 in expenses and costs, for a total award of $55,226.10.

■ The number of hours spent by plaintiff's counsel in litigating Weaver–Bailey's case was reasonable. Generally, the court will not second-guess counsel's time allocation. The court in *Florida Rock Industries, Inc. v. United States*, 9 Cl.Ct. 285 (1985), set forth this proposition:

> In a case such as this, the risk of abuse is minimal because plaintiff has no assurance of recovering and must assume it will bear the full cost of the litigation. Plaintiff can therefore be expected to exercise control over the time spent and the rates charged. Absent some specific showing of abuse, the court will not disapprove counsel's decision [as to what constitutes reasonable efforts].

*Id.* at 289.

### a. *Plaintiff's Request for a Cost of Living Adjustment*

■ Weaver–Bailey requests that a cost-of-living adjustment be granted, resulting in an award exceeding the $75 per hour cap on attorney fees. Defendant argues that such an adjustment is not warranted as the time span between the complaint and judgment was only three years. The government's argument is not compelling. Adjustments for cost of living are routinely granted "in order to compensate plaintiff for delay...." *Hirschey v. F.E.R.C.*, 777 F.2d 1, 5 (D.C.Cir.1985). A delay of three years, while perhaps too common in the current heavy litigation era, is a significant delay nonetheless. However, the court cannot grant a cost of living adjustment in this case due to plaintiff's failure to provide necessary data.

Weaver–Bailey suggests the court take judicial notice of the Consumer Price Index (CPI) as a method for calculating the cost of living adjustment. Plaintiff does not provide the court with the relevant CPI data nor does it suggest a method of calculating the adjustment. Instead, Weaver–Bailey simply defers to the court's discretion in this regard. "In short, [plaintiff] has improperly attempted to shift its burden of proving the allowability of [its claim] to the court. This the court cannot countenance." *Malissa Co., Inc. v. United States*, 18 Cl.Ct. 672, 675 (1989). Therefore, Weaver–Bailey's claim for a cost of living adjustment is denied. The court

finds that plaintiff is entitled to $33,465.00 in attorney fees for 446.2 hours at the statutory rate of $75 per hour. However, Weaver–Bailey shall have 60 days in which to submit a request for a cost of living adjustment with the appropriate data.

### b. *Plaintiff's Claims for Costs and Expenses*

Under the EAJA, a prevailing party may also recover expenses (28 U.S.C. § 2412(d)(1)(A)) and costs (28 U.S.C. § 2412(a)). "For purposes of EAJA, 'costs and expenses are not synonymous but are words of art.'" *Keyava Constr. Co. v. U.S.*, 15 Cl.Ct. 135, 140 (1988) (quoting *Bennett v. Department of the Navy*, 699 F.2d 1140, 1144 (Fed.Cir.1983)). In the instant case, plaintiff has confused the terms. Plaintiff breaks down its claim for $21,761.10 in costs and expenses as follows:

| | |
|---|---|
| Litigation Expense (long distance, copies, postage) | $ 3,998.49 |
| | |
| Experts | |
| (Jack Blaess Engineering) | 12,571.41 |
| (Wiley N. Cook) | 3,777.82 |
| (Garver & Garver) | 634.56 |
| | |
| Bill of Costs | 778.82 |
| | $21,761.10[5] |

The $3,998.49 in telephone, copying and postage expenses claimed by plaintiff as litigation expenses are more properly viewed as costs. As such they are within the court's discretion to award. *Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 14 (1990). Defendant has not challenged the reasonableness or documentation of these costs, nor can it.[6] Plaintiff diligently sets forth, item per item (some as small as $0.15), the costs incurred since the complaint was filed. The court finds that Weaver–Bailey is entitled to recover the $3,998.49 for long distance telephone, copying and postage charges.

Defendant also challenges the claim for the services of experts Jack Blaess Engineering and Wiley N. Cook because they were rendered prior to the filing of the complaint. The EAJA prohibits recovery of fees and expenses incurred during plaintiff's "prosecution of its certified claim before the contracting officer." *Keyava Constr.*, 15 Cl.Ct. at 138. "Nor can a successful EAJA applicant recover 'those [fees otherwise] incurred during administrative consideration of a claim before litigation.'" *Cox Const. Co.*, 17 Cl.Ct. at 33 (1989), *quoting United Const. Co.*, 11 Cl. Ct. at 599 (1987). However, legal fees and factual research in preparation for Claims Court litigation are considered fees incurred by a party in a civil action under the EAJA. *Cox Const. Co.*, 17 Cl.Ct. at 34 n. 2. Thus the question is not whether the services were rendered prior to the filing of the complaint, but whether they can be considered legal fees or factual research in preparation for litigation.

Jack Blaess Engineering performed its services between January 1, 1985 and December 31, 1985. Of the $3,777.82 billed by Wiley N. Cook, $910.00 was for services rendered in 1985. Weaver–Bailey did not submit its certified claim to the contracting officer until 1986 and did not file its complaint in this court until March 16, 1987. Thus, the $12,571.41 in services rendered by Jack Blaess Engineering and the $910.00 from Wiley Cook are more reasonably viewed as attendant to Weaver–Bailey's claim before the contracting officer. As such those services are not recoverable under the EAJA.

Defendant does not challenge the remaining claims for expert fees or plaintiff's Bill of Costs. Weaver–Bailey is entitled to recover the $2,867.82 for Wiley Cook's services in connection with litigation and the

---

5. Plaintiff's Exhibit 1 in support of Motion for Attorney's Fees.

6. Instead, the government argues that telephone, copying and postage costs are precluded by *Griffin & Dickson v. United States*, 21 Cl.Ct. at 14, and *Keyava Construction*, 15 Cl.Ct. at 140. However, neither of these cases holds that such costs are unrecoverable under the EAJA. In *Griffin & Dickson*, the court awarded plaintiff its telephone, copying and mailing charges but stated that they were costs and not expenses. In *Keyava*, the court held that such costs were precluded by its earlier judgment on the merits where it ruled that no costs were to be awarded to either party.

$634.56 billed by Garver & Garver. The court also finds that plaintiff can recover the $778.82 claimed in its Bill of Costs for the filing fee and transcript costs.

To summarize, the court finds that Weaver–Bailey is entitled to recover the following attorney fees, costs and expenses:

| | |
|---|---|
| Attorney fees | $33,465.00 |
| | |
| Costs | |
| (phone, copies, postage) | 3,998.49 |
| (Bill of Costs) | 778.82 |
| | |
| Experts | |
| (Wiley N. Cook) | 2,867.82 |
| (Garver & Garver) | 634.56 |
| | $41,744.69 |

## CONCLUSION

Plaintiff has met all the requirements of the EAJA, and the government has failed to meet its burden of demonstrating that its position was substantially justified. Weaver–Bailey is entitled to recover $41,-744.69 in attorney fees, expenses and costs. Plaintiff has 60 days within which to file a request for a cost of living adjustment with the appropriate data. If plaintiff fails to do so, this award will become final.

It is so ORDERED.