**FLORIDA ROCK INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 266–82L.**

United States Claims Court.

Dec. 6, 1985.

---

John A. DeVault III, with whom were C. Warren Tripp, Jr. and Bedell, Dittmar, De-Vault, Pillans & Gentry, Jacksonville, Fla., for plaintiff.

Fred R. Disheroon, with whom were George B. Henderson II and Asst. Atty. Gen., F. Henry Habicht II, Washington, D.C., for defendant.

## ORDER

KOZINSKI, Chief Judge.

Plaintiff prevailed in its suit for inverse condemnation for the taking of its land through regulation. *See Florida Rock Industries, Inc. v. United States,* 8 Cl.Ct. 160/ (1985). It now seeks attorney's fees and costs pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 42 U.S.C. § 4654(c) (1976). Defendant concedes that plaintiff is entitled to costs and attorney's fees but disputes the amounts plaintiff claims.

### Procedural History

Plaintiff filed suit on May 25, 1982, and the parties engaged in discovery and other pretrial proceedings for about 19 months. Discovery proceeded amicably with little assistance from the court. At the urging of the parties, the court severed the trial on liability from that on damages; the liability trial was held in West Palm Beach, Florida, January 3–11, 1984. During the liability trial plaintiff presented 11 witnesses and some 70 exhibits; defendant presented 10 witnesses and some 20 exhibits.

Following the trial on liability, the parties requested the opportunity for post-trial briefing and argument. One of the issues vigorously disputed was whether plaintiff would be compensated for the full 1560 acres it owned or whether its recovery would be limited to 98 acres, the area for which it had actually sought a Corps of Engineers permit. The court heard post-trial argument in Washington, D.C., on May 7, 1984, and concluded that defendant had taken plaintiff's land through regulation and that plaintiff was therefore entitled to recover. The court, however, limited plaintiff's recovery to 98 acres.

On August 2, 1984, the court issued an order noting the Federal Circuit's opinion in *Skaw v. United States,* 740 F.2d 932 (Fed.Cir.1984), and inviting counsel to express their views of *Skaw* 's effect on the court's earlier ruling as to the extent of taking. The parties dutifully filed briefs taking opposing positions as to the effect of *Skaw* and the court heard oral argument on the issue on August 30, 1984. While standing by its earlier ruling, the court noted that the issue was extremely close. It therefore suggested that the parties conduct the trial on valuation on alternative theories (98 acres and 1,560 acres). The parties adopted this suggestion and the valuation trial was held in Washington, D.C., between April 22 and May 7, 1985. During the valuation trial, plaintiff presented 17 witnesses and approximately 43 exhibits and defendant 5 witnesses and some 7 exhibits.

At the conclusion of trial and oral argument, the court held that, on the date of the taking, the 98 acres were worth $1,029,-000 and the 1,560 acres were worth $10,-

580,000. Judgment for plaintiff in the amount of $1,029,000 was entered on May 29, 1985.

Plaintiff seeks $1,385,000 in attorney's fees and $210,414.17 in expenses.[1] The attorney's fees were calculated on the basis of some 3,000 hours of attorney time plus an additional 1,300 hours of law clerk and paralegal time. In calculating the amount of the attorney's fees, plaintiff seeks hourly rates higher than actually billed by its attorneys. In addition, it seeks the application of a "multiplier" of some 2.5 to the time actually spent, on the theory that the difficulty of the case and the results achieved warrant an extraordinary legal fee. Plaintiff's claimed expenses consist of expert's fees, travel and other expenses incurred by the client in connection with the litigation, and expenses incurred by the attorneys in connection with the case.

## Discussion

Under plaintiff's compensation arrangement with its attorneys, the lawyers kept track of their time and billed plaintiff on an hourly basis, with different rates applicable to different professionals, largely on the basis of their experience. *See* pp. 290–91 *infra*. In addition, the attorneys incurred certain expenses that were passed on to the client. The attorneys billed plaintiff periodically for these charges.

■ The existence of a market arrangement, whereby the attorneys agreed to perform certain work and the client agreed to make certain payments, would seem to establish with a fair degree of accuracy the reasonable attorney's fees and expenses incurred by plaintiff in this litigation. Nevertheless, both plaintiff and defendant would deviate from these amounts. Plaintiff would increase the attorney's fees, arguing that the amounts billed are too low, not fully reflecting the expertise of the attorney, the risk incurred or the results achieved. Defendant complains about attorney time it views as duplicative, unnecessary or excessive. As discussed in greater detail below, these arguments are largely beside the point where there is a bona fide contractual arrangement whereby the client has committed to pay the amount billed by the attorneys, whether or not it can be recovered from the opposing party.

1. Plaintiff originally sought $212,199.06 but withdrew $1,784.89 of that amount in response

In such circumstances, the court should not second-guess the workings of the market in determining the reasonableness or appropriateness of the fees and expenses.

### A. *Attorney's Fees*

### 1. *The Number of Hours*

Plaintiff has submitted affidavits and time records documenting the following hours spent on this case:

| | |
|---|---|
| John A. DeVault III | 1,292.7 hours |
| C. Warren Tripp, Jr. | 1,411.0 hours |
| Associates | 206.6 hours |
| Law Clerks | 623.1 hours |
| Legal Assistants | 686.0 hours |

Counsel billed plaintiff $351,265.50 for this time. Defendant argues that not all of this time is properly recoverable by plaintiff because some of the hours spent were "unnecessary, excessive, or duplicative." In addition, defendant argues that plaintiff should not recover for time spent on issues as to which it did not prevail. These arguments are considered in turn.

i. Defendant raises numerous objections to various items of time billed by plaintiff's attorneys. For example, it objects to time spent by plaintiff's counsel in familiarizing himself with the procedures of this court; attending oral argument in another case before the same judge; and participating in a court conference. In addition, defendant argues that plaintiff should not recover for two attorneys attending the same deposition or for duplication that must have occurred when there was a change in junior attorneys. More sweepingly, defendant notes that the time spent by plaintiff's counsel greatly exceeded that spent by its own attorneys, arguing that the time spent on behalf of plaintiff must have been excessive.

■ The court is reluctant to second-guess counsel's time allocation for what has proved to be a winning case. Plaintiff was entitled to hire competent counsel, and counsel, in turn, had the responsibility to undertake all reasonable efforts in securing a victory. What constitute reasonable efforts cannot be defined with precision; it is a matter of professional judgment as to which the court will allow great leeway.

to defendant's objections.

In a case such as this, the risk of abuse is minimal because plaintiff has no assurance of recovering and must assume it will bear the full cost of the litigation. Plaintiff can therefore be expected to exercise control over the time spent and the rates charged. Absent some specific showing of abuse, the court will not disapprove counsel's decision to have two lawyers rather than one attend a deposition; or to spend some time familiarizing himself with court procedures; or to learn something about the judge before whom the case would be tried and argued. Also, some frictional duplication of time because of a change in attorneys is an unfortunate expense, but one that is not unusual when litigation takes several years to complete. The amount of time spent on these matters is, in any case, small in the context of the case as a whole, and there is no reason to impose these costs on the plaintiff rather than the defendant.

▪▪▪ Defendant's alternative argument that plaintiff's hours are excessive because they greatly exceed those spent by defense counsel overlooks a number of important considerations. Plaintiff can be expected to work harder because it carries the burden of proof. The burden is particularly heavy for a plaintiff in an inverse condemnation case where the pitfalls are many and the victories few. As noted in the court's earlier opinion, defense counsel here "launched a volley of arguments as to why plaintiff should ... be denied any recovery. Many of these arguments [were] ingenious and forcefully presented." 8 Cl.Ct. at 165. Success by defendant on even one of these arguments would have been fatal to plaintiff's case. It is not surprising that, in seeking to shoulder its burden, plaintiff spent considerable time and effort on its legal and factual presentation. Also, in comparing the time spent by plaintiff with that spent by defendant, it is not irrelevant that plaintiff won while defendant lost. The time spent by defendant can therefore hardly be viewed as a fair measure of how much time plaintiff's counsel should have spent.

ii. Defendant is on much firmer ground when it argues that plaintiff should not recover for time spent litigating issues as to which it did not prevail. As the Supreme Court noted in *Hensley v. Echerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983), "[w]here [a] plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."

▪▪▪ The court will not examine every motion or pleading, or attempt to determine who won each litigation skirmish. If plaintiff prevails on the merits, it is generally entitled to recover its full cost of litigation, even if it lost some procedural issues along the way. Here, however, plaintiff lost on a significant substantive issue: It sought to recover for the full 1,560 acres but the court limited its recovery to 98 acres. *See* p. 287 *supra.* Plaintiff is not entitled to attorney's fees incurred in seeking compensation for the full 1,560 acres or establishing the value thereof, to the extent that such expenses would not have been incurred with respect to the 98 acres alone.

Determining what effort went to advance a particular issue in complex litigation is not unlike trying to make lemons out of lemonade. Research pertaining to one issue may well lead to authority relevant to another. Witnesses and exhibits frequently provide information relevant to the case as a whole. The court therefore must make a judgment that, although informed, cannot be precise. On the basis of familiarity with the case and review of the evidence presented, the court reduces by 15% the hours of professional time claimed by plaintiff. This represents the court's best judgment as to the time spent by plaintiff's counsel that would not have been spent if only the 98 acres had been in issue.

2. *Enhanced Hourly Rate and Multiplier*

Plaintiff seeks an award of attorney's fees in excess of what it has paid its attor-

neys. Plaintiff argues first that the actual hours be enhanced by a multiplier and second that the attorney's fees be computed on the basis of an hourly rate higher than that billed by its lawyers.

i. Plaintiff argues it is entitled to a multiplier because of the difficulty of the case, the great success achieved, the risk involved in bringing the lawsuit and the fees awarded in similar cases. Courts have relied on such factors in awarding attorney's fees. *See, e.g., Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *Fadhl v. Police Department of San Francisco,* 32 EPD (CCH) ¶ 33,746 (N.D.Cal.1983), *rev'd and remanded on other grounds,* 741 F.2d 1163 (9th Cir.1984) (with direction to reconsider attorney's fee award if plaintiff ultimately prevails); *Richardson v. Restaurant Marketing Associates, Inc.,* 527 F.Supp. 690 (N.D.Cal.1981). Reliance on such factors is appropriate where there is a contingent fee arrangement or no contractual agreement at all to establish the attorneys' compensation. However, such factors only approximate what the attorney's services are worth, since the market alone can evaluate all of the tangible and intangible considerations that determine the appropriate compensation for legal services. *See Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 18–19 (D.C.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). Where, as here, attorney and client have agreed on the time to be spent and the rates to be charged, the market has spoken and there is no reason for the court to reverse engineer the process.[2] In reaching agreement, lawyer and client have already considered and weighed all the relevant factors. *Id.* at 24–26.

This approach is fully consistent with the language of the Relocation Act, which provides that a successful plaintiff shall be "reimbursed[d]" for attorney's fees and other expenses. 42 U.S.C. § 4654(c). The Act thus entitles a plaintiff to be made whole for expenses incurred in achieving victory. That the result may have been a novel one or that the chances of success were small does not alter the fact that plaintiff can be reimbursed only for money it has actually spent or that it is obligated to spend. There is no authority for awarding plaintiff or its attorney a windfall on the basis of result achieved, litigation risk or any other consideration.

ii. The issue is closer with respect to plaintiff's request for an enhanced hourly rate, turning on the contractual arrangement between plaintiff and its counsel. Plaintiff's lead counsel describes the fee arrangement with plaintiff as follows:

There is no written fee agreement between Florida Rock and the firm. As is the firm's practice in most commercial cases, the firm regularly billed Florida Rock on the basis of its minimum hourly rates for time devoted by attorneys, law clerks, and legal assistants and for the out-of-pocket expenses actually incurred, with the understanding that at the conclusion of the case, it would be paid a reasonable fee based on all of the factors appropriately considered in determining a reasonable fee, including the results obtained.

Plaintiff's corporate (in house) counsel describes the relationship in similar terms.

On the basis of this arrangement, plaintiff was billed $100–125 per hour for lead counsel (an attorney with 15 years experience); $85–100 per hour for second-chair counsel (an attorney with 6 years experience); $50–70 per hour for associates; $35–40 per hour for law clerks; and $35 per hour for legal assistants.

Plaintiff has submitted expert affidavits from attorneys in Washington and Florida suggesting that the appropriate hourly rates for the services rendered should be much higher than those billed, namely $170–200 for lead counsel; $135–175 for

---

**2.** The court respectfully disagrees with cases suggesting otherwise. *See, e.g., Foster v. United States,* 3 Cl.Ct. 738, 740 & nn. 7 & 8 (1983), *aff'd.*

*mem.,* 746 F.2d 1491 (Fed.Cir.1984); *Pitchford Scientific Instruments Corp. v. Pepi, Inc.,* 440 F.Supp. 1175 (W.D.Pa.1977).

second-chair counsel; and $70–140 for associates. Plaintiff argues that these then become the applicable hourly rates under the fee arrangement with its attorneys, and that it should be reimbursed by defendant at these higher rates.

The court first notes that plaintiff's counsel did an exceptionally fine job in this case. As mentioned previously, this is a very difficult area of the law where successful plaintiffs are few and far between. Defendant was represented by skillful and imaginative attorneys who tenaciously argued every reasonable position. Plaintiff's counsel undoubtedly worked extremely hard to overcome these obstacles. Even measured against the unusually high standards of practice that prevail in the Claims Court, counsel's presentation of plaintiff's case was outstanding in every respect. If plaintiff were liable to its attorneys for an hourly rate in the range suggested by the expert affidavits, the court would not hesitate to award it.

 The court, however, is unpersuaded that plaintiff owes its attorneys more than what was billed. Plaintiff presents no contract calling for an additional payment, but only recites an "understanding" that an enhanced fee would be paid at the conclusion of the case. Plaintiff cites no authority that such an "understanding" amounts to a contract under Florida law; it describes no situation where this understanding has resulted in an additional payment to its attorneys; it does not represent that it paid counsel an enhanced fee after the successful conclusion of the case; it does not commit to make such a payment in the future even if the court should deny an enhanced recovery. Since the purpose of the Relocation Act is to make a successful plaintiff whole for its expenses of litiga-

tion, there can be no recovery for an enhanced fee on the basis of such a vague arrangement. *See Branning v. United States,* 7 Cl.Ct. 777, 783 (1985). If plaintiff is not legally obligated to pay its attorneys more than what was actually billed, defendant is not liable for any such additional sum.

### B. *Litigation Expenses*

 Defendant objects to various expenses claimed by plaintiff as excessive or duplicative. The court has reviewed the claimed expenses and finds them reasonable. As with attorney's fees, the court will not second-guess counsel's decision to incur expenses it thought necessary to properly present its case. Since plaintiff had no assurance of winning, and therefore no assurance of recovering any of its costs, there is good reason to believe that plaintiff would not have incurred frivolous or unnecessary expenses, or allowed its lawyers to do so. As the court noted in *Laffey,* "[t]he line of division [between compensable and uncompensable expenses] should fall where the market has placed it." 746 F.2d at 30. The court therefore approves plaintiff's claimed expenses without discussing each item in detail.[3]

While the court approves the costs presented by plaintiff and not withdrawn, a portion of the costs were devoted to presenting the issue as to which plaintiff lost. *See* p. 289 *supra.* It is therefore appropriate to reduce the costs in the same manner as the attorney's fees. However, the court is of the view that the costs should be reduced by a somewhat lesser amount than the attorney's fees because many of the expenses would have been incurred even with respect to the 98 acres

---

**3.** The court will address one item to which defendant objected with particular vigor, the $84,876.45 fee paid to Paul Larsen and Associates. Defendant argues that the time spent by Mr. Larsen (1000 hours) was excessive. The court disagrees. Mr. Larsen contributed significantly to plaintiff's development of its case by presenting various visual aids describing the property and its surroundings. It was quite clear that plaintiff's counsel relied heavily on Mr. Larsen and that Mr. Larsen's participation at trial was essential to plaintiff's presentation. The court cannot disagree with counsel's decision to rely on Mr. Larsen in this manner and, in light of that participation (much of it observed by the court), the claimed fee does not appear excessive.

alone. Plaintiff shall therefore be entitled to all of the actual litigation expenses incurred, reduced by 10%.

### C. *Calculations*

#### 1. *Attorney's Fees*

The following are the hours spent by plaintiff's counsel reduced by 15%:

| | |
|---|---|
| John A. DeVault III | 1,098.8 hours |
| C. Warren Tripp, Jr. | 1,199.4 hours |
| Associates | 175.6 hours |
| Law Clerks | 529.6 hours |
| Legal Assistants | 583.1 hours |

■ During the course of the litigation, the hourly rate charged by plaintiff's counsel changed. Defendant has suggested, however, that the court award the attorney's fees based upon counsel's highest hourly rate, so long as defendant is then not required to pay interest. The court adopts this suggestion. Therefore the applicable hourly rates will be as follows: $125 for lead counsel; $100 for second-chair counsel; $70 for associates; $40 for law clerks, and $35 for legal assistants, for a total of $311,174.

#### 2. *Expenses*

Plaintiff has claimed expenses of $210,-414.71. When reduced by 10%, the amount that plaintiff is entitled to recover is $189,-373.24.

### Conclusion

Plaintiff shall recover as follows:

(1) Attorney's fees in the amount of $311,174;

(2) Expenses in the amount of $189,-373.24.

Upon receipt of a mandate of affirmance from the Court of Appeals for the Federal Circuit, the clerk is directed pursuant to RUSCC 60(b) to amend this court's May 29, 1985, judgment for plaintiff to include recovery of the above amounts.