Joan A. McDOWELL, Administratrix of the Estate of James J. McDowell, Sr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 226–81C.

United States Claims Court.

Sept. 26, 1991.

Reconsideration Granted in Part and Denied in Part Dec. 20, 1991.

Fredric J. Gross, Mount Ephraim, N.J., for plaintiff.

John S. Groat, with whom were David M. Cohen, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civil Div., U.S. Dept. of Justice, for defendant. Lieutenant Commander Robert Metcalf and Lieutenant Commander Byard Clemmons, U.S. Dept. of Navy, of counsel.

## OPINION

SMITH, Chief Judge

This case comes before the Court on an application by plaintiff for attorneys' fees and litigation expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(a) ("EAJA").

Plaintiff claims that it is entitled to an award of $97,445.50 for attorney fees incurred while litigating James J. McDowell, Sr.'s disability status at the time of his separation from the Temporary Disability Retired List ("TDRL"). This amount reflects fees charged in excess of the statutory cap. Plaintiff relies on its attorney's special qualifications in seeking an adjustment to the $75.00 per hour EAJA cap and alternatively seeks at least $112.16[1] per hour in order to reflect the marked in-

---

1. $112.16 was based on the $75 per hour statutory fee adjusted by the Cost Price Index for Urban Wage & Clerical Workers in the Philadelphia Region for June 1991 (141.8), as compared with the CPI for October 1981 (94.7). However, those actually amount to $110.32, the $112.16 being a minor mathematical error. In addition, the court has recalculated the appropriate fee below based on more recent CPI statistics to arrive at $111.37 per hour.

crease in the cost of living since the EAJA first took effect. In addition to reimbursement of attorney fees, plaintiff seeks $804.54 in costs.

For the reasons set forth below, the court finds that plaintiff is entitled to $54,239.62 in attorney fees, which reflects a cost of living adjustment but does not compensate for the special qualifications of counsel alleged by plaintiff. As this case can be satisfactorily resolved through application of the EAJA, the court need not consider plaintiff's alternative basis for seeking compensation.[2]

## FACTS

In October of 1973, while on active duty, James J. McDowell, Sr. suffered an injury to his back, and was placed on the sick list at the Navy Regional Medical Center in Philadelphia. An examination in December, 1974, at the Philadelphia Naval Hospital, indicated a possible arteriovenous malformation. After referral to a medical board and an informal hearing, McDowell was rated as having a 40% disability and placed on the TDRL on April 22, 1975.

During the period he was on the TDRL, Mr. McDowell worked for the Budd Company as a platform foreman and shipper checker. While working there on January 23, 1976, Mr. McDowell slipped and fell, suffering a back injury. In March of that year, a disc was removed from Mr. McDowell's back. In 1978, Mr. McDowell was again examined at the Navy Regional Medical Center in Philadelphia. The examination results were essentially similar to those from 1974 and Mr. McDowell was maintained on the TDRL at 40% disability.

Mr. McDowell was unable to maintain any civilian employment after his second injury, and underwent a second operation in April, 1979. A Medical Board, held on March 24, 1980, recommended plaintiff's separation with a 20% disability rating. Mr. McDowell rejected this proposed find-

ing and requested a formal hearing. After a formal hearing on June 17, 1980, at which Mr. McDowell was represented by military counsel, the Regional Physical Evaluation Board sustained the 20% disability rating. The Physical Review Council affirmed the findings of the Regional Physical Evaluation Board.

On September 26, 1980, Mr. McDowell was removed from the TDRL and honorably discharged by reason of physical disability with entitlement to disability severance pay. Contesting his 20% disability rating, Plaintiff instituted an action in the United States Court of Claims in April, 1981. On January 30, 1984, the Court remanded the case to the Director, Naval Council of Personnel Boards, and the case was referred to the President, Naval Physical Disability Review Board (NPDRB). On April 5, 1984, the NPDRB found that Mr. McDowell should have been placed on the Permanent Disability Retired List with a 40% disability rating as of April 22, 1980. Pursuant to the judgment of the Claims Court on August 2, 1985, Mr. McDowell was retired by reason of physical disability effective April 22, 1980, with a 40% permanent disability rating. Mr. McDowell subsequently appealed, and the Court of Appeals for the Federal Circuit vacated the order and remanded the case to this Court for further proceedings.

During the pendency of the proceedings, Mr. McDowell applied to the Board for Correction of Naval Records pursuant to 10 U.S.C. § 1552. The board conducted a *de novo* hearing, recommended relief, and the Secretary of the Navy corrected plaintiff's records on August 11, 1987, to show that he retired with a 100% disability rating. Thereafter, and in reliance upon the Navy's action, the Veterans Administration allowed Mr. McDowell disability compensation at the 100% level, retroactive to the day following his separation from the TDRL. Inasmuch as the VA's rate of compensation is greater than the disability re-

2. As an alternative basis for recovery, the petitioner argues that he is entitled to counsel fee sanctions under 28 U.S.C. § 1927. This theory is based on original government counsel's successful September 9, 1981 application to stay all

proceedings pending disposition of a summary judgment motion which had not yet been filed, and her subsequent requests for additional time in which to file said motion.

tirement pay which plaintiff sought in this litigation, plaintiff has elected pursuant to 38 U.S.C. § 3105 to take the VA disability benefits.

## DISCUSSION

The parties do not dispute that plaintiff was the prevailing party for the purposes of EAJA. However, defendant contends that its position in the litigation was substantially justified, thereby precluding an award of attorneys' fees. Plaintiff contends that the United States was not substantially justified within the meaning of EAJA in the following respects:

A. There was no basis in fact for the Navy decision rating plaintiff as 20% disabled, when in fact he was 100% disabled.

B. There was no basis in fact for the Navy position following remand that plaintiff was only 40% disabled.

C. There was no basis in law for the government's claim of a right to apportion the degree of plaintiff's disability among the Navy, Social Security and Worker's Compensation.

D. There was no substantial justification for the government's argument in the Federal Circuit that the Claims Court has no subject matter jurisdiction to review military disability determinations.

The government asks this Court to consider separately the government's position on different claims or phases of litigation for purposes of substantial justification analysis. When analyzing the government's litigation position, it may be divided into separate parts if a proposed division would "yield portions that are analytically 'sufficiently significant and discrete to be treated as ... separate unit[s]' for purposes of [a fee] award." *Cox Const. Co. v. United States*, 17 Cl.Ct. 29, 32 (1989). In this case, however, the government merely contends that its position was composed of distinct legal arguments of varying merit, without proposing any particular division of its position. Because the government's arguments are not sufficiently significant and discrete, they may be analyzed below with respect to the allegations made by

plaintiff as a whole. Moreover, the question of segregation is inconsequential as the court finds that all of the government's arguments lacked substantial justification.

## 1. SUBSTANTIAL JUSTIFICATION

For the government's position to be substantially justified, it must be " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). The government's position must have a "reasonable basis both in law and fact". *Id.*

While the government's failure to prevail does not raise a presumption that its position was not substantially justified, the government has the burden of demonstrating that its position was substantially justified. *Kali v. Bowen*, 854 F.2d 329 (9th Cir.1988). In the instant case, however, the government fails to meet that burden concerning plaintiff's allegations.

a. *The government's position that McDowell was only 20% or, after remand, 40% disabled.*

■ Plaintiff alleges that there was no basis in fact for the government's position that Mr. McDowell was 20% or, after remand, 40% disabled, when in fact he was 100% disabled. In support of its position, the government states that "[r]easonable people can search [sic] different conclusions as to the disability rating to assign a service member...." However, as the plaintiff makes clear:

[a] person with a 20% disability can routinely perform most of the tasks that a non-disabled person can perform, and therefore (by definition) suffers earnings impairment, on average, of only 20%. A person with a 100% disability is so severely disabled that he or she cannot pursue any substantial gainful activities, and therefore is unable to earn a living.

While people might reasonably reach different conclusions concerning a person's level of disability which differ 10% or 20%, here the government is suggesting that people can reasonably differ in such conclu-

sions 60% to 80%. It is plain that a totally disabled person can not perform many of the activities performed by a person who is 20% or even 40% disabled. Mr. McDowell was clearly limited in his activities to a much greater extent than the government's 20% and 40% ratings would reflect.

The government maintains that the difficult issue in these proceedings was separating and evaluating the effect of Mr. McDowell's 1976 injury at the Budd Company, from the effect of the injuries he sustained during his active naval service. As a result, the government argues that different levels of ratable disability for Mr. McDowell could be reasonably determined. However, even assuming that the second injury was an unrelated incident for which the government should not be responsible, the government still fails to meet its burden.

Two years after the Budd Company accident, plaintiff was examined at the Naval Regional Medical Center. As a result of the examination, plaintiff was maintained at the 40% disability level at which he had been placed after his first accident. Thus it seems clear that, in 1978, the government saw no worsening of Mr. McDowell's condition as a result of the Budd Company accident. It is inconsistent to now argue that this second injury could reasonably result in different levels of ratable disability for Mr. McDowell. The government's position in this respect was factually insupportable and not substantially justified.

b. *The government's contention that it has a right to apportion the degree of petitioner's disability among the Navy, Social Security and Worker's Compensation.*

■ Plaintiff alleges that there was no basis in law for the government's claim of a right to apportion the degree of petitioner's disability among the Navy, Social Security and Worker's Compensation. The government did not address the question of apportionment in its response to plaintiff's application for attorney fees and has made no attempt to justify its position in this respect. Therefore, the government has

wholly failed to meet its burden, and its position in this regard was not substantially justified.

c. *The government's argument that the Claims Court has no subject matter jurisdiction to review military disability determinations.*

■ The government maintains that it was justified in arguing that the Claims Court did not have subject matter jurisdiction for review of military disability cases. This assertion was made in the face of clear precedent; the Claims Court had been reviewing military disability determinations for nearly a half century when the government made this argument. In addition, the Federal Circuit, in the first sentence of its opinion, quickly disposed of the government's argument, stating simply: "[t]his court's precedents establish that the Claims Court possesses jurisdiction to review military disability decisions." *McDowell v. United States*, No. 86–517, slip op. at 2 (Fed.Cir. Nov. 19, 1986). Therefore, the position of the government was not substantially justified in this respect.

■ The government also contends that its argument concerning jurisdiction was made at the direction of the Court of Appeals for the Federal Circuit. However, the Court of Appeals requested the Supplemental Brief as a result of the government's assertion that the Claims Court lacked jurisdiction. The EAJA was created to compensate parties for having to litigate issues for which the government's position is not substantially justified. Therefore, the important consideration here is whether plaintiff had to litigate against a position that was not substantially justified.

■ The government points out that even though plaintiff referred to the government's position regarding the Claims Court's lack of jurisdiction as "farcical," counsel spent 20.9 hours of his time preparing his brief on this question. The mere fact that counsel spent a good deal of time on this question in his brief does not make the government's position here any more justified. Substantial justification arises from the merit of the position, and

not the time spent litigating it. Plaintiff could not take any position of the government lightly; if he failed to show the weakness of even one of the government's arguments, he may have lost his case. Therefore, this Court will not say that the plaintiff spent an unreasonable amount of time on this issue to counteract the government's argument, or that the amount of time spent on this issue proves that the government's position was substantially justified.

In conclusion, the government has failed to meet its burden in showing that it was substantially justified in its position. Thus, plaintiff should be awarded reasonable attorney fees and expenses.

## 2. ATTORNEY FEES

■ As plaintiff has achieved total success in this litigation and has met all other requirements for an award of attorney fees and expenses, the Court must next determine the amount to be awarded. As a general rule, plaintiff is entitled to "reasonable attorney fees." 28 U.S.C.A. § 2412(d)(2)(A). Plaintiff claims that he should be awarded $97,445.50 in attorneys fees. However, this amount is incorrect based on the number of hours worked and the rates charged. When plaintiff's arithmetic is corrected, it becomes clear that he actually seeks $93,340.50. This amount represents 468.95 hours of work performed by Fredric J. Gross, attorney for the plaintiff, billed at $195 per hour. In addition, an associate of Mr. Gross billed 18.05 hours at $105 per hour.

The number of hours spent by plaintiff's counsel in litigating Mr. McDowell's case was reasonable. The government does not contest the number of hours and the court will not second-guess counsel's time allocation. As the court stated in *Florida Rock Industries, Inc. v. United States*, 9 Cl.Ct. 285 (1985):

[T]he risk of abuse is minimal because plaintiff has no assurance of recovering and must assume it will bear the full cost of the litigation. Plaintiff can therefore be expected to exercise control over the time spent and the rates charged. Absent some specific showing of abuse, the court will not disapprove counsel's decision [as to what constitutes reasonable efforts.]

*Id.* at 289.

a. *Plaintiff's assertion that special factors justify an exception to the $75.00 per hour statutory cap.*

■ Plaintiff claims that special factors exist justifying an award in excess of the statutory $75 per hour cap. The EAJA states that reasonable attorney fees are based on:

prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

§ 2412(d)(2)(A).

Plaintiff argues that his counsel, Mr. Gross, possesses and necessarily utilized specialized knowledge and skill in this case. Specifically, plaintiff points to Gross' knowledge of military disability matters, which is reflected by his years as a paralegal concerned with service members' and veterans' rights and his coauthorship of the ACLU's handbook, THE RIGHTS OF VETERANS. Plaintiff also maintains that there are very few who practice this type of law, and that Mr. Gross is the only attorney he knows of in New Jersey who might have accepted plaintiff's case. Finally, McDowell argues that military disability retirement is an arcane corner of employment law because it addresses suitability for civilian employment, and as a result, few attorneys will prosecute such cases, even when they have merit.

■ Generally, courts are reluctant to recognize areas of specialty in the law. For an amount above the $75 per hour cap to be awarded, a "distinctive knowledge or specialized skill ... as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation" is required. *Pierce v. Underwood,*

487 U.S. at 572, 108 S.Ct. at 2554. For example, patent law is an identifiable practice specialty for which attorney fees can be reimbursed above the cap because such qualifications are necessary to properly litigate a case. *Id.*

Plaintiff does not sufficiently demonstrate that a specialty in military disability law is necessary to competently litigate a case of this nature. The arguments that plaintiff makes are of such broad and general application that they cannot be used to exceed the statutory cap. *Id.* at 573, 108 S.Ct. at 2554. If allowed in this case, these same factors would argue for ignoring the cap in virtually every case before the court. This is clearly contrary to the intent of Congress.

Plaintiff fails to show that the nature of the case necessitated that an attorney with specialization was "required to competently litigate its case." *Esprit Corp., Inc. v. United States,* 15 Cl.Ct. 491, 494 (1988) (federal procurement law not specialized skill justifying an increase in attorney fees). Although Mr. Gross' specialized skills were undoubtedly helpful in plaintiff's litigation of the case, no showing is made that they were beyond the normal legal talents essential to successfully litigate any case. Therefore, no special factor exists justifying an award in excess of the $75 per hour statutory cap.

b. *Plaintiff's claim for a cost of living adjustment based on the current cost of living.*

Plaintiff asks that a cost of living adjustment be granted, resulting in an award in excess of the $75 per hour cap on attorney fees. Adjustments for cost of living increases are routinely granted, and it seems equitable to grant such a request here.

The government concedes that a cost of living adjustment may be appropriate in this case, but that any adjustment should be made from the date the legal work was performed. The government argues that

allowing additional compensation merely for the time needed to obtain a final decision on the EAJA application would be to allow interest without the required specific statutory waiver of sovereign immunity.

The government's argument is not persuasive. The cost of living adjustment should be calculated based on the current cost of living "in order to compensate plaintiff for delay...." *Hirschey v. F.E.R.C.,* 777 F.2d 1, 5 (D.C.Cir.1985). The majority of counsel's time in this case was spent from 1980–1985. The government would have the cost of living adjustment made as of the date the work was performed. However, this argument would render the cost of living adjustment at least six years out of sync with the current cost of living when payment is finally made. To adequately compensate plaintiff for delay, it should be granted an adjustment based on the cost of living when payment is made. To do otherwise would result in a cost of living adjustment in name only.

The Cost Price Index for Urban Wage & Clerical Workers in the Philadelphia Region for August 1991 (the most recent statistics available) was 143.2. The comparable October 1981 figure was 94.7. Therefore, $75 of October 1981 money is the equivalent of $111.37 in August 1991 dollars.

It has already been shown that plaintiff is entitled to reimbursement for 487 hours of attorney fees. Therefore, at $111.37 per hour, plaintiff should receive $54,239.62 in attorney fees.

3. COSTS

■ Plaintiff also applies for an award for $804.54 in costs. This amount represents $509.81 in connection with his original application in the Court of Claims, $248.91 of costs from his appeal in the Federal Circuit [3], and $89.82 in costs incurred with plaintiff's hearing at the Board for Correction of Naval Records. This amount is actually $848.54, as plaintiff made a mathematical error when comput-

---

**3.** This amount does not include $314.72 in costs allowed by the Federal Circuit and paid by

defendant.

ing costs. The court finds that plaintiff is entitled to this sum less the costs associated with the appeal as the costs which were not allowed by the Federal Circuit shall not be given here. Thus, the court finds that plaintiff is entitled to $599.63 in costs.

## CONCLUSION

Plaintiff has met all requirements of the EAJA, and the government has failed to meet its burden in showing that its position was substantially justified. While the plaintiff is entitled to a cost of living adjustment, no special factors have been shown which would allow for an award in excess of the $75 per hour statutory cap. Therefore, plaintiff should be awarded $54,239.62 in attorney fees and expenses, and $599.63 in costs.

It is so ORDERED.

## ORDER

1) Defendant's motion for reconsideration is denied in part as to plaintiff's entitlement to attorney fees under the Equal Access to Justice Act (EAJA). *McDowell v. United States*, 24 Cl.Ct. 205, 208–10 (Cl. Ct.1991). It is, however, granted in part as to quantum. *Id.* at 210–12.

2) In *Chiu v. United States*, 948 F.2d 711 (Fed.Cir.1991), the Court of Appeals held that a cost of living adjustment (COLA) to the $75 attorney fee allowed under the EAJA must be determined as of the date the services were performed. However, the Court of Appeals added that "we do not mean to preclude the court from adopting, in an appropriate case, a single mid-point inflation adjustment factor applicable to services performed before and after that midpoint." *Id.* at 722, n. 10. In the instant case, attorney services were rendered from October 1981 to October 1991. Therefore, the court will choose October 1986 as the appropriate mid-point at which to determine the inflation adjustment factor. The Cost Price Index for Urban Wage & Clerical Workers in the Philadelphia region for October 1986 was 112.0. The comparable 1981 figure was 94.7. Therefore, $75 of 1981 money is the equivalent of $88.98 in 1986 dollars.

3) Plaintiff has already demonstrated its entitlement to reimbursement for 487 hours of attorney fees. Therefore, by the COLA adjusted hourly rate of $88.98, plaintiff should receive $43,333.26 in attorney fees.

4) Plaintiff's Second Supplemental EAJA Declaration is denied as the applicant may not receive fees for the time spent defending the higher rate. *Commissioner v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990).

5) The court will rule on plaintiff's First Supplemental EAJA Declaration when the briefing is complete, if the parties are unable to resolve this matter between themselves.